436 So.2d 538 (1983)
Mrs. Mary Jane C. MECHE, Individually, as Natural TUTRIX OF and for the Use and Benefit of Her Three Minor Children, Alton Joseph MECHE, Pamela Ann Meche and Mary Rhodnoda Meche, James A. Meche, Tina Meche Midkiff and Patricia Meche Naquin
v.
GULF STATES UTILITIES COMPANY.
No. 82-C-1899.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
*539 Joe J. Tritico, C. Jerre Lloyd, Lake Charles, for applicant.
Fred S. Sievert, Jr., Robert S. Dampf, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for respondent.
LEMMON, Justice.
The principal issue in this case is whether Gulf States Utilities acted unreasonably in extending an uninsulated high voltage line through the interior of a mobile home park at a height of 23 feet and is consequently liable for the injuries and death which resulted from contact with that line.

I.
On February 15, 1980, at about 5:00 p.m., Leroy Meche, along with other members of his family, visited at his daughter's mobile home, which had been moved into the Atherton Trailer Park the previous day. The family dined together and then attempted to watch television, but found the reception poor. Meche, along with his daughter's husband and others, drove to the daughter's former home to retrieve the television antenna, which had not yet been moved. They returned at about 8:30 and attempted to install the 27-foot, 10¾-inch antenna on the north side of the trailer. As Meche and others raised the antenna towards a family member on a ladder next to the trailer, the antenna struck Gulf States' uninsulated 7,600-volt electric line, which ran parallel to the trailer. Meche was killed, and his son, Joey, was seriously injured.
After trial in the ensuing litigation, the jury answered special interrogatories and found that Gulf States was not negligent and that the electric power line, although in Gulf States' custody, was not defective and did not create an unreasonable risk of harm.
The court of appeal affirmed. 416 So.2d 1316. Relying on this court's decision in Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the court concluded that the jury's findings were not clearly wrong. We granted certiorari to review these rulings. 420 So.2d 972.

II.
The electric line in question was installed in July, 1979, at the request of the trailer park owner, who had begun expansion of an *540 existing trailer park. The area of expansion was approximately 176 wide on the public road and 250 feet deep.
Gulf States was already supplying electric service to the trailers in the existing trailer park from a 7,600-volt line along the western boundary of the area of expansion. Gulf States decided that the best location for the new line was either along the northern (or rear) boundary or along the eastern boundary of the area of expansion, but rejected these when the adjoining landowner refused to grant a servitude for construction on the boundary line. Gulf States then decided to construct the line 50 feet south of the northern boundary, running east and west from the existing line on the west and extending between two rows of trailer stalls. The lines were hung from 35-foot poles, with the energized line on the bottom at a height of approximately 23 feet above the ground and the neutral line three feet above the energized line. At the time that the new line was installed, there were mobile homes in the existing trailer park, but the proposed stalls in the area of expansion were not yet occupied.
Meche's daughter's trailer occupied a stall in the second row south of the north boundary line. The energized line was 13 feet, 4½ inches north of (in front of) the trailer and 12 feet, 115/16 inches from the top of the trailer roof.
The National Electric Safety Code requires that uninsulated line over driveways, roads and residential areas be at least 20 feet above the ground. There were no specific requirements in the Code for the height of lines in trailer parks. The expert testimony conflicted on whether compliance with the minimum standards for heights over residential areas and roadways was sufficient for trailer parks.
Plaintiffs' expert, Dr. Ambrose Ramsey, Jr., testified that trailer parks present a different situation than residential areas and that more precautions should be taken because of the mobility of the homes and the frequent necessity of connecting utilities and of raising television antenna. He opined that the line at the minimum height for residential areas did not comply with the general rule in the Code that all equipment and lines should be installed and maintained so as to reduce hazard to life as far as practical. (Rules 200, 210, 211 of the National Electric Safety Code.) Ramsey suggested that safer alternatives would have been to construct the line on the boundary as originally planned, to place the line underground, to insulate the line, or simply to hang the energized line higher on the same pole. Ramsey also explained that the 7,600-volt uninsulated line, which ran parallel to the trailers, created a greater risk of accident and exposure than if the lines had run perpendicular to the trailers.
Plaintiffs' second expert agreed that a line which extended through the trailer park, parallel to and between spaces, presented a hazard, and he also suggested alternatives which would have made the area safer.
Defendant's expert, Dr. Wayne Roelle, testified that the line was in complete compliance with the National Electric Safety Code. He opined that the line was reasonably safe, since the line was visible in daylight and since a person's raising a 27-foot antenna into a line during hours of darkness was not reasonably foreseeable. He dismissed the plaintiffs' experts' suggestions for alternatives in that they solved some problems while creating others.[1]

III.
Similar issues were addressed in Thomas v. Gulf States Utilities Co., 128 *541 So.2d 323 (La.App. 1st Cir.1961), in which the court stated:
"It is reasonable to anticipate that people who live in trailers will have television antennas, and that such antennas may be raised to heights in excess of the minimum requirements of heights of wires required by the National Electric Safety Code and in excess of the height of the wires in this instance. Trailer homes are normally temporary in nature, necessitating frequent putting up and taking down of TV antennas. The space which these antennas occupy is clearly an area where people normally go for work or pleasure, creating a corresponding duty on the part of the company maintaining high-voltage lines to exercise the greatest degree of care to protect the public."
See also Annot. 82 A.L.R.3d 113 (1978).
Gulf States contends, and we agree, that mobile homes are not moved frequently in modern living and that there should be no difference in this case between a mobile home and a permanent home in the pertinent location. However, mobile homes in a trailer park are generally (as they were in this case) placed closer together on smaller lots than permanent homes in a subdivision and are generally served by fewer streets (on which the high voltage lines are frequently located in subdivisions). Extra precautions may be necessary because of special circumstances.
When extending the high voltage line in the present case through the interior of the trailer park, parallel to and between two rows of trailers, Gulf States should have reasonably anticipated that many residents of the trailers in those two rows might erect television antennas upon moving into the area and therefore knew or should have known of the risk that such activity might cause contact with the electric wires in close proximity to those particular trailer sites. Gulf States could have placed the high voltage line higher on the pole (or at least above the neutral line, as was done along the eastern boundary), or taken any of several precautions to minimize the special risk to these particular trailers.[2] Yet Gulf States simply relied on the warning of danger implicit in the mere presence of electric wires in plain view. That warning, while perhaps effective for those who erected television antennas in daylight hours, simply was insufficient in the present case. Gulf States apparently installed the line on the assumption that none but the most grossly negligent would cause contact with the 23-foot high wires in plain view for all to see. However, when Leroy and Joey Meche attempted to erect the antenna after dark by the illumination of headlights of two vehicles, there was no effective warning to them of the presence of the wires.
We conclude that Gulf States' substandard conduct in failing to take special precautions for the special risk of extending a high voltage line through the interior of the trailer park was a legal cause of this accident.

IV.
Because the jury and the court of appeal found that Gulf States was not negligent and did not create an unreasonable risk of injury, neither considered the issue of whether the conduct of Leroy and Joey Meche was a cause of this accident. After a review of the record, we conclude that it was not and that plaintiffs are not barred from recovery.
The Meche family arrived at the trailer in the late afternoon of the first day that the trailer was in the park. This was Leroy's and Joey's first visit to the new site. Mrs. Meche testified that she did not remember seeing the wires overhead when they arrived. Ricky Midkiff, who arrived with the Meches and who helped with the attempt to install the antenna, testified that the first time he saw the wires was just as the men *542 were raising the antenna.[3] Midkiff denied any discussion of the wires before they raised the antenna.
Unlike the victims in Kent and Thomas, none of the participants in this case was aware of the presence of the overhead lines when they attempted to raise the antenna.[4] In Kent, the victim (who was held contributorily negligent by the court of appeal) had been repeatedly warned of the presence of the lines and even joked about them almost immediately before the accident.[5] Similarly in Thomas, the victim was barred from recovery because at least three persons on separate occasions questioned the wisdom of attempting to erect the antenna near the lines.
Here, there was no reason for the men to anticipate the existence of an uninsulated high voltage line within reach of a normal television antenna in the middle of a mobile home park.[6] While courts have held that daylight electrocution victims are notified of the hazard by the very presence of poles and electric lines, the same cannot be said about a victim electrocuted in the dark. The men in this case raised the antenna into an electric line which they did not know was there, could not see, and had no cause to anticipate. We accordingly hold that no fault or substandard conduct of Leroy or Joey Meche was a legal cause of this accident.
For these reasons, the judgments of the lower courts are reversed, and judgment is rendered in favor of plaintiffs and against defendant. This case is remanded to the court of appeal for fixing damages on the basis of the complete record.
MARCUS, J., dissents.
BLANCHE, J., dissents and assigns reasons.
BLANCHE, Justice (dissenting).
The central issue raised in this case is whether Gulf States' placement of the uninsulated electrical line created an unreasonable risk of injury. Factors traditionally considered in determining whether the conduct of a particular defendant is substandard or creates an unreasonable risk of harm include: (1) the likelihood of the harm; (2) the gravity of the harm; (3) the burden of prevention; and (4) the social utility of defendant's conduct. Weighing all of these factors in light of the evidence adduced at trial, I am of the opinion that the placement of the electrical line in the present case did not create an unreasonable risk of injury.
In reaching this decision, I take particular note of the fact that the location of the electrical line twenty-three feet above the ground was in strict compliance with the National Electric Safety Code requirements for placement of uninsulated lines over driveways, roads, and residences. Furthermore, the line was clearly visible during daylight hours. The risk that an individual would raise a twenty-seven foot antenna directly into the electrical line during hours of total darkness was remote and not easily foreseeable. To hold that Gulf States engaged in substandard conduct under these circumstances amounts to a finding of strict *543 liability on the defendant's part. I cannot subscribe to such a result.
Even if, as the majority contends, Gulf States' conduct could be deemed negligent, the actions of the Meches in erecting an antenna during the evening hours without taking any safety precautions or checking for apparent obstructions (such as the electrical line) constitutes contributory negligence.
I respectfully dissent.
NOTES
[1] Roelle explained that underground line would create other hazards, such as contact with the line in subsequent digging to install fences or repair utility lines. He also pointed out that the placement of transformers above the ground might pose a danger to children in the area. He dismissed the suggestion of insulating the line with the explanation that insulation on high voltage lines is likely to deteriorate with time and might create a false sense of security for those working around and under the lines. As to placing the line higher, Roelle observed that the line met the minimum clearance, which was designed to place the line out of the reach of people engaged in normal activities. He also indicated that any increase in the height of the line also increases the danger to men servicing the line.
[2] Indeed, if the perimeter lines were installed at the same height with the energized line on top, it is logical that the interior line in close proximity to the trailer locations should have been installed at a greater height.
[3] As noted earlier, the installation took place in the darkness by the light of headlights from two vehicles, which did not illuminate the overhead area. There was, however, a street light on a pole on the far side of the adjacent trailer to the east.
[4] Defendant presented testimony that another resident of the park had seen Leroy Meche earlier that day helping his daughter's husband level the trailer and that Meche had observed the witness' daughter's kite become tangled in the very wire which later caused the electrocution. Plaintiff rebutted this evidence of Meche's awareness of the line with Midkiff's testimony that Meche did not arrive until later that evening with the rest of the family and with the testimony of Francis Meche, who was there earlier that day and who had helped Meche's son-in-law level the trailer.
[5] Because this court found that Gulf States was not liable in Kent, we did not specifically address the issue of contributory negligence.
[6] Plaintiffs' expert testified that it was reasonable to anticipate antennas between 20 and 30 feet in length.