490 So.2d 1088 (1986)
John D. AUCOIN, et al., Plaintiffs-Appellants,
v.
LOUISIANA POWER & LIGHT COMPANY, Defendant-Appellee.
No. 85-223.
Court of Appeal of Louisiana, Third Circuit.
April 29, 1986.
Writ Denied June 20, 1986.
Long & Long, Glynn A. Long, Donaldsonville, for plaintiffs-appellants.
Monroe & Lemann, Kenneth P. Carter, New Orleans, for defendant-appellee.
*1089 Before LABORDE, YELVERTON and FONTENOT,[*] JJ.
H. WARD FONTENOT, Judge Pro Tem.
This is a case involving death by electrocution through contact with electrical transmission lines. The plaintiffs, John V. Aucoin and Marie Aucoin, are the surviving parents of the decedent, Larry John Aucoin. The sole defendant herein is Louisiana Power and Light Company (LP & L). From a judgment for the defendant, the plaintiffs have appealed.
The decedent, age 26, died on August 26, 1983. On that day, he was assisting his brother-in-law, Ricky J. Glynn, in erecting a television antenna above a mobile home owned by Glynn. The location of the trailer was next to the home of the decedent's parents in a rural area referred to as Belle River, Louisiana. The trailer had been moved to the site in 1982 and had been positioned directly beneath electrical transmission lines which traversed the property. This overhead distribution line had been constructed in 1955. On the day of the accident, the distance from the ground to the overhead conductor wire in the power lines was thirty-one feet. The distance from the top of the trailer to the same line was twenty-two feet. The power lines were uninsulated in that none were wrapped with any insulating material.[**]
The antenna apparatus was mounted on a combination mast. First, it was attached to a ten-foot pole which in turn was extended with another length of metal pipe, the union being made by use of straps and tape. The combination formed a mast measuring twenty-six feet in total length.
Involved in the installation project were Aucoin, Glynn, and another helper, Loveless Gros, Jr. Next to the mobile home was a wooden utility pole against which the metal antenna mast was to be secured. In order to achieve the objective, Glynn and Aucoin climbed on top of the mobile home while Gros stood on the ground. The mast was raised and leaned against the mobile home. When the three workers attempted to move the mast alongside the utility pole it was discovered that the bottom part of the mast had mired in the soft mud. Glynn instructed Gros to raise the mast so that the bottom would be released. As it was raised, the weight of the entire apparatus shifted upward and the workers lost control. The antenna tipped over and made contact with the transmission line forming a ground circuit through Aucoin. The shock he received was fatal.
The trial court, in oral reasons, granted judgment in favor of the defendant finding that the defendant was negligent neither in the construction of the line nor in its maintenance. Neither did he find any breach of duty in the failure to give a warning regarding the danger.
On the basis of reasons discussed in the leading case of Kent v. Gulf States Utilities Company, 418 So.2d 493 (La. 1982), the trial court was correct in applying the principles of negligence rather than strict liability in determining the liability of the defendant. Recognizing that electric transmission companies must maintain high power lines which are inherently dangerous, it has been stated that they are required to exercise utmost care but not required to guard against situations which cannot be reasonably expected or contemplated. Simon v. Southwest Louisiana Electric Membership, 390 So.2d 1265 (La. 1980).
Thus, the first inquiry of this court is to determine if the trial judge was in manifest error in finding that the accident in this case could not reasonably have been anticipated.
The facts show that the power line over the Glynn trailer was thirty-one feet above the ground. This was in excess of the vertical clearance standards of the National *1090 Electrical Safety Code by a distance of thirteen feet. Although mere compliance with safety standards does not, per se, preclude the finding of negligence, the determination of compliance vel non does shed light on the question of foreseeability. In addition, it was pointed out in the case of Hebert v. Gulf States Utilities Company, 426 So.2d 111 (La.1983), that initial compliance with the safety standard does not relieve a public utility from keeping abreast of significant changes in circumstances and from taking measures when unreasonable risks are discovered. An example of this continuing duty was seen in Hebert wherein the company had been alerted that a metal building was under construction in close proximity to its lines; one near fatality had already occurred. This case does not present anything comparable. The transmission line was erected initially with the excess safety margin mentioned above. The locale was rural at the time of construction and had remained so. There had never been an incident reported to indicate that the location or method of construction was presenting a foreseeable risk.
While it is true that there were other television antennae in the locality, none had a mast of sufficient height to be in close proximity to an overhead power line. In fact, had the antenna mast fashioned by Glynn been fastened at the bottom end before its erection, it could have been safely moved into a vertical position with a full five foot clearance remaining from the overhead power line.
Testimony established that the relatively low voltage of these transmission lines meant that the danger of electricity arcing through the air to a nearby object would occur only within a few inches of contact. (Arcing did not figure into this incident because there was actual contact). It was shown to be a practice in the industry to leave power lines uninsulated when the location is adequately isolated. The trial court expressed some puzzlement as to the sequence of events which led these workers to intrude upon the isolation by raising the mast off of the ground a distance of five to seven feet from a relatively safe position to a lethal one. Whatever the explanation, the trial court was not clearly wrong in concluding that the whole episode was unforeseeable under the standard of care expected of a utility company.
On the issue of warning, the trial court also correctly pointed out that a utility company's breach of duty to warn will only lead to liability if that breach was in some way related to the accident. Meche v. Gulf States Utilities Company, 436 So.2d 538 (La.1983). If the circumstances are such that the warning would have been ineffective and would have done nothing to avert the accident, then liability does not follow. In the Meche case, residents of a trailer park, attempting to erect an antenna at night, were oblivious to the fact that an overhead power line existed only twenty-two feet above the ground of the park. In this case, the power line was in plain view as is seen in the photographs introduced into evidence; the parties were working on a clear day during daylight hours; and most important of all, the decedent and the workers had been warned verbally to "watch the wires" by two persons who were present at the time. The decedent and the other workers had full knowledge of the overhead power lines and as full an appreciation of the danger therein as any warning which the defendant reasonably could have given.
The findings of the trial court herein are supported by the evidence and cannot be said to be clearly wrong. Acadian Heritage Realty, Inc. v. City of Lafayette, 434 So.2d 182 (La.App. 3rd Cir.), writ denied, 440 So.2d 733 (La.1983).
For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[*] Honorable H. Ward Fontenot, Pro Tempore.
[**] The term "uninsulated" is used by the court with its generally accepted meaning. Such concepts as "insulation by air" or "insulation by isolation" are confusing and not to be used in this opinion.