514 So.2d 239 (1987)
Raoul T. CREPPEL
v.
LOUISIANA POWER AND LIGHT COMPANY.
No. 87-CA-201.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1987.
Writ Denied December 18, 1987.
*240 Douglas M. Schmidt, Peter R. Borstell, New Orleans, for plaintiff/appellant.
Monroe & Lemann, Andrew P. Carter, Kenneth P. Carter, Jeffrey M. Lust, New Orleans, for defendant/appellee.
Before DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
This case arises from an accident in which the plaintiff was seriously injured from contact with electrical transmission lines. From judgment in favor of the defendant, the plaintiff appeals.
Raoul T. Creppel and his wife lived in a house they purchased in 1976 in the Woodmere Subdivision in Harvey. Louisiana Power & Light Company had erected overhead power lines on a servitude at the rear of the Creppels' lot a year earlier. Creppel was injured on July 12, 1985, when he, unaided, attempted to take down a television antenna from its tripod stand near the rear of his house. He lost control of the pole and antenna which fell and made contact with a high voltage line. Creppel grasped the pole as it fell and incurred severe electrical burns to his hands and feet.
Creppel filed suit against LP & L, alleging that the utility's negligence caused his injuries. After a four day trial the jury rendered a verdict on May 23, 1986, finding that LP & L was negligent but that its negligence was not a proximate cause of the accident. On June 18, 1986, the court rendered judgment in accordance with the verdict in favor of the defendant, Louisiana Power & Light Company, and against plaintiff, Raoul T. Creppel, casting him for all costs.
In his appeal, the plaintiff raises the following issues: 1) whether the trial court was in error in not allowing plaintiff to file into evidence accident reports of the defendant involving antennas and its power lines; 2) whether the court erroneously failed to excuse the juror, Compagno, for cause; 3) whether the defendant's negligence was the proximate cause of the plaintiff's injury and, if so, whether damages should be awarded.
The Law
The Supreme Court has considered the principles of tort liability to be applied to cases of injury from accidental contact with electrical transmission lines several times *241 in recent years. In Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982) the court specifically rejected a suggestion that utility companies be subjected to absolute liability and applied the principles of negligence, assessing liability under a duty-risk analysis. In Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983) the law is summarized as follows:
Electric transmission companies which maintain and employ high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable. Simon v. Southwest La. Elec. Membership, 390 So.2d 1265 (La.1980); Nessmith v. Central La. Electric Co., 257 So.2d 744 (La.App. 3d Cir.), writ denied, 261 La. 480, 259 So.2d 921, 922 (1972). However, an electric utility is not required to guard against situations which cannot reasonably be expected or contemplated. Simon, supra.

The court held the utility company liable, finding a foreseeable risk that a construction worker for a metal building in an industrial park would handle large structural sections near transmission lines and accidentally make contact. The company had had warning because of a line contact by a crane at the site four days earlier but failed to take any precautionary steps, such as de-energizing the line, warning, or insulating. Professor William E. Crawford, in commenting on developments in the law as to liability of utility companies, stated that the Hebert decision signified a "sharply increased practical burden on defendant electric utility companies."[1] He considered the duty of care to be even more stringent in Meche v. Gulf States Utilities Co., 436 So.2d 538 (La.1983); there the court held that Gulf States should have protected occupants of a trailer park by installing the lines at a greater height, or by other special precautions, since it was foreseeable that the high voltage lines might come into contact with antennas being put up. The mobile homes were also close together.
In another case involving an antenna, Aucoin v. Louisiana Power & Light Co., 490 So.2d 1088 (La.App. 3rd Cir.1986), writ denied 491 So.2d 381 (La.1986), the plaintiff was assisting in installing a twenty-six feet long antenna to a utility pole near a mobile home. The mobile home had been moved in 1982 next to a residence on a rural site, where an overhead distribution line had been built in 1955. The overhead clearance from the top of the trailer to the line was twenty-two feet and from the ground thirty-one feet. In maneuvering the antenna mast into place the men raised it upward, lost control, and the antenna fell against the wire. The court acknowledged that, although the clearance was in excess of the standards of the National Electrical Safety Code when installed, a utility company has a continuing duty to take precautionary measures as circumstances change, citing Hebert v. Gulf States Utilities Co., supra. However, the court held that the risk in this case was not foreseeable, as the locale had continued to be a rural one and no previous incidents had suggested a problem involving location or construction of the line. It distinguished Meche v. Gulf States Utility Co., supra, factually in that the clearance there was considerably less and the persons were new residents, working in the dark, while in Aucoin it was daytime and the men were fully aware of the overhead lines, having been told also to watch out for the wires.
Liability of Louisiana Power & Light
In the case before us the crucial issue raised on appeal is whether the jury was correct in finding that the negligence of LP & L was not a cause of Creppel's accident. The interrogatories completed by the jury read as follows:
1. Was the defendant, Louisiana Power & Light, negligent?
Yes _____ if yes, answer # 2.
No _____ if no, go on further and return to court.
2. Was the negligence of defendant, Louisiana Power & Light, a proximate cause of the plaintiff's injury?
Yes _____ if yes, answer # 3 and # 5a.
*242 No _____ if no, answer # 5a as zero percent and return to court.
3. Was the petitioner, Raoul T. Creppel, negligent?
Yes _____ if yes, answer # 4.
No _____ if no, answer # 5b as zero percent.
4. Was the negligence of petitioner, Raoul T. Creppel, a proximate cause of his own injury?
Yes _____ if yes, answer # 5b
No _____ if no, answer # 5b as zero percent.
5. What amount of negligence expressed in percentage figures do you find attributable to each of the parties?
a. _____ percentage attributable as to the defendant,
b. _____ percentage attributable as to the plaintiff,
(a and b must total 100%)
The jury checked "Yes" to 1, "No" to 2, and "0%" to 5(a). The jury was given only two choices with regard to fault: LP & L and Creppel. Since it found that LP & L's negligence did not cause Creppel's injuries, we can only assume the jury found Creppel's own negligence caused his injuries.
Creppel was 59 at the time of the accident, had a sixth grade education, and had worked previously for the Jefferson Parish Sheriff's office and as a substitute tugboat or port captain. He testified that he had purchased the antenna second-hand two years earlier and that no instructions for installing or dismantling came with it. He first installed a tripod stand a few feet from the back of his house. The pole for the antenna consisted of three telescoping pipes, which he assembled and taped together then raised the pole and antenna up and onto the tripod with no assistance. He denied having seen the warning sticker on the rabbit ears or the one on the bottom pipe when making the installation.
Creppel's account of his taking down the antenna is as follows:
Well I was in the backyard taking my antenna down, my TV antenna down, I decided to [do] it, while I didn't have nothing else to do. And uh, I unscrewed the bottom bolt from the tripod and I figured I'd lift the antenna out of the tripod and put it on the ground and then afterward to lay down parallel to the back of the house. Just about then I guess I must aa, start (sic) the pole started getting out of balance it went into the tree, oak tree in the back of my house. And uh more then likely it must of when (sic) into the tree and probably bounced back and I tried to bring it back and first thing you know I was electrocuted. (Emphasis supplied.)
Creppel admitted knowing that the power lines were there but said he did not know they were dangerous. On cross examination he testified that the lines were visible but then later said that he could not see the power lines "because of the limbs of the tree and the leaves." When asked in what direction he was facing when he started lifting the antenna he replied that he was facing the house, with his back to the lines. He testified that he could have taken the antenna down by untaping and telescoping the pole but did not. He explained:
I could have done it if I had a step ladder but I figured I put it up there and I was going to take it down the same way.
Creppel said he did not own a ladder and did not borrow things.
The plaintiff's position is that because it was foreseeable that a person might come into contact with the power lines when dismantling the antenna without telescoping it, the utility company had a duty to protect him by insulating the wires, by warning of the danger, or by taking other precautions. LP & L breached that duty.
The plaintiff's expert electrical engineer, Robert Briggs, visited the site and testified at length on the National Electric Safety Code. He found that the vertical clearance of the lines met or exceeded the standard. However, he testified that the Code is to be read in its entirety and that the utility company is obligated to take into account circumstances that require greater clearances, *243 such as television antennas. The utility company is required to maintain its lines, including periodic inspection and testing of the lines. He felt that the company failed in this respect, as the presence of the antenna was overlooked or unreported, when it was foreseeable that it might fall when it was being taken down. He stated that the antenna should have been installed on the side of the house, safely away from the lines. Finally, had the lines been insulated, Creppel would not have been injured.
The plaintiff's expert in the human factor and engineering in the field of safety, Wilfred Gallardo, testified that as the antenna stood before the accident if it had been blown over it would have had less than the five feet of horizontal clearance required by the Electrical Safety Code. He stated that two trees completely obscured the power lines, with limbs extending to the radius of the lines. It would be natural for a person to try to get a kite or a television antenna out of the trees if it was caught there. He also felt that it was not unreasonable and was foreseeable for a person to take down an antenna in one piece.
The plaintiff argues that the company had a duty to require its meter readers to inspect each property for the presence of hazardous antennas. Two LP & L meter readers testified that their job was to read meters but they were told to look for hazards, specifically problems with the lines or meters themselves, such as low service lines, missing pan covers, broken cross-arms or broken meters. They recorded meter readings on portable computers but there was no code for recording antennas on the computer. There is no evidence that either reader had been to Creppel's address on the day of the accident. They testified that they did not enter the yard but read the meter on earlier rounds by looking through or over the fence.
The thrust of LP & L's argument is that it had complied with the safety code and Creppel caused the accident by lowering the antenna without collapsing the pole. It avers that, as the jury made reasonable inferences of fact from the evidence before it, there is no reason for this court to disturb the verdict.
The company points out that there was a clear warning sticker at eye level on the bottom segment of the pole, which read: "DANGER. WATCH FOR WIRES. YOU CAN BE KILLED if this antenna comes near electric power lines." Although Creppel denied seeing it, it is difficult to believe he had not, when the antenna was in place for more than two years. Moreover, the appellee argues that Creppel did not need to be warned of the lines as he admitted knowing of their presence. As noted above, the said lines had been installed in 1975, a year before appellant purchased the house.
The testimony of Jim Montz, district representative of LP & L who investigated the scene immediately after the accident, was in opposition to that of the plaintiff's experts as to visibility of the power lines. He testified that when he stood next to the tripod the lines were not obscured, the branches of trees were not in contact with the primary conductors, and the trees in Creppel's back yard did not need trimming.
Frederick Michael Brooks, the defendant's expert in electrical engineering, visited the site in March, 1986. He measured the antenna which was still in the yard and computed its proximity to the power lines. He testified that there was horizontal clearance of two to three feet, even taking down the antenna as Creppel intended. There was no "antenna conflict" except with the lowest 120-240 volt line on the pole, which was insulated, hence no hazard. In investigating compliance with the Code, he considered all revisions up to the date of the accident and determined that LP & L had complied. He explained that a utility company protects the public either by installing the lines high enough to isolate them from general accessibility or by insulating them. He stated that high voltage overhead wires are rarely insulated because the insulation tends to break down under static charges created by the high electric voltage. On cross-examination Brooks admitted that it was foreseeable that when cable television was available to the neighborhood, residents *244 might take down their own antennas. He also testified that he had investigated several accidents involving residents who contacted power lines with antennas, though not necessarily television antennas.
Assuming the jury correctly found that LP & L was negligent and breached its duty to warn, it could only find the defendant at fault if the breach of duty was related to the accident. Meche v. Gulf States Utilities Company, supra. As explained in the case of Aucoin v. Louisiana Power & Light Co., supra, at 1090:
... If the circumstances are such that the warning would have been ineffective and would have done nothing to avert the accident, then liability does not follow. In the Meche case, residents of a trailer park, attempting to erect an antenna at night, were oblivious to the fact that an overhead power line existed only twenty-two feet above the ground of the park. In this case, the power line was in plain view as is seen in the photographs introduced into evidence; the parties were working on a clear day during daylight hours; and most important of all, the decedent and the workers had been warned verbally to "watch the wires" by two persons who were present at the time. The decedent and the other workers had full knowledge of the overhead power lines and as full an appreciation of the danger therein as any warning which the defendant reasonably could have given.
Creppel admitted under cross examination that the power lines were visible and that it was unsafe to place any equipment near the line. The accident happened in daylight, as in the Aucoin case. Even though he was aware of the lines at the back of his property, Creppel stood with his back to the lines when he lifted the antenna up and attempted to lay it on the ground. We find that he acted in total disregard of the danger of which he was well aware and that any additional warning would not have averted the accident. We hold that the jury was correct in finding that LP & L was not at fault in causing the accident.
Admissibility of Reports of Previous Accidents
The trial judge held a hearing on May 15, 1986, five days before the trial date, on whether or not the plaintiff should be allowed to amend his pretrial order to include reports of previous accidents involving contact between antennas and LP & L power lines. The court denied the request, which was filed May 9 for a trial set for May 20.
The appellant asserts that the denial was error because there are fourteen reports of accidents that occurred when persons were installing or dismantling antennas, which would serve to show that LP & L had knowledge of the potential for danger in such activity.
The trial court has much discretion in determining whether a pretrial order may be modified. Butler v. Jefferson Disposal Co., Inc., 460 So.2d 1062 (La.App. 5th Cir.1984), writ denied 462 So.2d 187 (La.1984). That discretion must be exercised to prevent substantial injustice to the parties who have relied on pre-trial rulings and structured their cases accordingly. Gilcrease v. Gilcrease, 438 So.2d 658 (La. App. 2nd Cir.1983), writ denied, 442 So.2d 461 (La.1983).
Evidence of previous accidents is admissible for the limited purpose of showing that a thing or place was dangerous and the defendant knew of the dangerous condition. Conversely, evidence of the absence of other accidents has been held admissible to show the condition of the thing or place and the defendant's lack of knowledge. Ketcker v. Illinois Central Gulf R. Co., 440 So.2d 805 (La.App. 1st Cir.1983), writs denied 444 So.2d 1220 and 1222 (La. 1984), and cases cited therein. The prior accidents must be closely related in circumstance to the injury or hazard at issue. Miller v. Employers Mut. Liability Ins. Co., 349 So.2d 1353 (La.App. 2nd Cir.1977), writ denied 352 So.2d 235 (La.1977); Keen v. Pel State Oil Co., Inc., 395 So.2d 866 (La.App. 2nd Cir.1981), writ denied 401 So.2d 355 (La.1981).
The appellee here argues that the LP & L accident reports involved antenna *245 conflict accidents from all parts of the state and that to be relevant a previous accident must have occurred at the same place, quoting 70 A.L.R.2d 179 (1960). In Lee v. K-Mart Corp. 483 So.2d 609 (La. App. 1st Cir.1985), writ denied 484 So.2d 661 (La.1986), the court stated the criteria as follows, at 613:
... Thus, to be relevant the other accident should occur at substantially the same place and under substantially the same conditions and must be caused by the same or a similar defect, danger, act or omission. Evidence of other accidents occurring at substantially different places or under different circumstances or conditions is irrelevant and inadmissible.
LP & L argues that to be admissible, the reports must involve accidents that occurred in Creppel's subdivision and on the very same line.
A review of the accident reports, which LP & L had produced under objection, reveals that there were nine incidents statewide involving antenna contact between 1981 and July 12, 1985 when Creppel was injured.[2] Only two of the nine took place on the West Bank of Jefferson Parish, both of which occurred during the installation of the antenna, not during its dismantling. We find that the bare reports in themselves without testimony on the circumstances of each accident would not have been conclusive evidence of similarity to Creppel's accident and of LP & L's awareness of that particular antenna hazard.
Error in Seating Juror
The plaintiff contends that Salvatore Campagno should have been dismissed from the jury for cause. In the voir dire plaintiff's counsel asked the jurors whether any of them knew someone who worked for LP & L, to which Compagno replied, "I have dealings with LP & L." Counsel then asked whether anyone had a problem "with giving a large amount of money for a large amount of injuries." Compagno responded:
I don't believe in giving a large amount of money for any type of injury expect for loss of life.
Counsel did not question Compagno further. On the following day before the taking of testimony plaintiff's counsel asked to approach the bench. He reports in brief that he asked the judge to excuse Compagno for cause, which he refused. A review of the transcript reveals no recordation of plaintiff's counsel's challenge. It was his duty to have the bench conference recorded if he wished the challenge preserved. Bernard v. Richoux, 464 So.2d 856 (La.App. 5th Cir.1985). As he did not, we do not consider the merits of this issue.
Accordingly, for the reasons assigned above, we hold that the jury findings were not in error and the judgment appealed from is affirmed.
AFFIRMED
NOTES
[1] "Developments in the Law, 1982-83," 44 La.L Rev. 579 (1983), at 581.
[2] There were fourteen separate reports because in four of the accidents two persons were injured and Creppel's accident was counted.