572 So.2d 1058 (1990)
Kathleen Noto BROWN, Individually and as Administratrix of the Succession of Robert Leon Brown, and as Tutrix of the Minor Child Michelle K. Brown
v.
The STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Barriere Construction Company and United States Fidelity and Guaranty Company.
No. 89-CA-445.
Court of Appeal of Louisiana, Fifth Circuit.
December 12, 1990.
Rehearing Granted in Part and Denied in Part February 8, 1991.
*1060 Peter A. Feringa, Jr., Christoffer C. Friend, New Orleans, for defendants-appellants Barriere Const. Co. and U.S. Fidelity & Guar. Co.
Jesse Guillot, New Orleans, for defendant-appellee State of La.
Jan P. Jumonville, New Orleans, for defendant-appellee U.S. Fire Ins. Co.
Edward F. Downing, III, Metairie, for plaintiffs-appellees.
Before GAUDIN, GRISBAUM and GOTHARD, JJ.
GAUDIN, Judge.
This is an appeal by the Louisiana Department of Transportation and Development and a highway contractor, Barriere Construction Company, from a judgment of the 24th Judicial District Court finding each 30 per cent at fault for a one-car accident on the Westbank Expressway in Gretna, Louisiana. The fatally-injured plaintiff driver was found to be 40 per cent responsible.
Petitioners are the surviving wife and minor child of Robert L. Brown, who was allegedly misled off the major portion of the highway and onto an exit roadway under construction. Following an eight-day trial, a jury awarded $175,000.00 to Mrs. Brown and $275,000.00 to Brown's eight-year-old daughter, Michelle, each award subject to 40 per cent reduction because of Brown's contributing (or comparative) negligence.
For the following reasons, we affirm the findings of the jury and the judgment of the district court.
On appeal, each defendant specified five district court errors. The Department of Transportation and Development argues that the trial court erred:
(1) when it failed to consider the obligations and duties of the state to the motoring public,
(2) when it did not give proper consideration to the fact that Brown drove without care or caution through a construction area,
(3) when it applied strict liability,
(4) when it did not find that Brown's violation of traffic regulations was the legal cause of the accident, and
(5) when it failed to find that the driver's gross negligence was the sole and legal cause of the accident.
Barriere assigned these errors:
(1) the finding of negligence on Barriere's part was legally erroneous as the construction company owed no duty of care to a grossly negligent driver,
(2) the jury erred in not finding Brown at least 90 per cent at fault, even assuming that Barriere breached a duty of care,
(3) the trial judge failed to grant a new trial because of jury misconduct,
(4) the trial judge erred in admitting (a) evidence of another accident and (b) photographs of post-accident safety measures, and
*1061 (5) the awards were excessive.
Mrs. Brown and her daughter answered the appeal, saying that Mrs. Brown's award should be increased to $612,684.00 and Michelle's award raised to $450,000.00.
Neither the department nor the construction company strenuously argued that its percentage of responsibility should be lessened at the expense of the other; instead, each defendant-appellant maintains primarily that Brown was grossly negligent and that no duty was owed him. By motion, the highway department voluntarily dismissed its third party demand on the construction company.
The trial was bifurcated. The claims against Barriere were tried before the jury while claims against the highway department were heard by the judge on the basis of the same evidence. The jury found Barriere 30 per cent responsible and Brown 40 per cent negligent, leaving 30 per cent responsibility attributable to the state. The trial judge, in rendering his judgment on October 28, 1988, also found the highway department 30 per cent at fault. The remainder of the trial judge's decree was also synonymous with the jury's findings and verdict.
The Second Circuit, in Burkett v. Honeyman, 561 So.2d 857 (La.App. 2 Cir. 1990), spelled out the general law regarding the highway department's liability. The DOTD (Department of Transportation and Development) is neither responsible for every accident nor is it the guarantor of the safety of highway travelers. It is, however, the duty of the department to construct and maintain roadways in a reasonably safe condition for persons exercising ordinary prudence.
Reasonable care requires the DOTD to erect barricades, signs and adequate warnings to alert the motoring public of dangerous, trap-like hazards, unusual obstructions, perilous conditions or defects. Whether a warning is required or adequate depends on the place where the danger exists and all circumstances surrounding the dangerous site.
There is no fixed rule for determining what is a dangerous defect. The facts and surrounding circumstances of each particular case control. The test usually applied, according to Burkett at page 860, is:
Was the public way maintained in a reasonably safe condition for drivers exercising ordinary care and prudence?

THE ACCIDENT
The instant accident occurred on the evening of August 13, 1981. Mrs. Brown had met her husband at a Westbank lounge where Brown, a City of New Orleans police officer, had been working an off-duty assignment. The lounge is situated near the Manhattan Boulevard-Westbank Expressway intersection in Harvey. The Browns left the lounge in separate automobiles and headed east on the Westbank Expressway toward Gretna and the Greater New Orleans Bridge.
At the intersection of the expressway and Evergreen Street, two signal lights before Stumpf Boulevard in Gretna, the Browns stopped at an Exxon service station where Mrs. Brown gave her husband coins for him to use in a cigarette dispenser. Mrs. Brown then drove off, expecting her husband to follow once he had obtained the cigarettes. She testified that his car's headlights were on.
Brown drove back onto the expressway and headed toward New Orleans. A short distance past Stumpf Boulevard, an asphalt roadway branched off from the expressway's far left lane and ran for a distance of approximately 400 feet. The asphalt roadway was part of highway construction work being done by Barriere. At that point, the expressway turns gradually to the left. Instead of staying on the expressway proper, Brown drove onto the asphalt roadway and eventually came face-to-face with an eight-foot wide wooden barrier on which there was a sign saying, "Road Closed." The barricade was at the end of the paved section of the exit ramp. There were two lights atop the barricade but they were not on. The barrier was six feet high.
The exit ramp was referred to throughout as both an exit and entrance ramp. While the ramp, when finished, would serve as an entrance to another part of the *1062 expressway, it was in fact an exit from the major roadway at the accident spot.
Neil Giroir, the veteran Gretna police officer who conducted the accident investigation, aided by several New Orleans policemen, said that the barricade "... was visible only after you were onto the ramp. If you were to travel at a path along the expressway, your lights would not hit it until you made that exit and were onto the ramp."
There were no barrels or guardrails right at the entrance to the exit ramp. A section of the plans and specifications (sheet 112) provided for the installation of barrels or guardrails at entrance and exit ramps and turnarounds, but nothing was in place on the night of the accident except the wooden barrier at the end of the ramp.
John LaPorte, a highway department consulting engineer assigned to this project, said the entrance was unguarded because (1) construction vehicles had to use the ramp during daylight working hours, (2) stripes had to be painted on the roadway and (3) there was no specification as to when barrels and/or guardrails had to be installed. A barrel and guardrail configuration was installed three days after Brown's accident but the jury was not advised of the date (April 17th).
LaPorte acknowledged later in his testimony that the striping was in fact done after the barrels and guardrails were in place.
In any event, Brown, once on the exit roadway and approaching the barrier, veered to his right to avoid the unlit barricade. He then drove on to what witnesses called an "up-slope." Brown's car traveled up this 20-foot-long elevated section and became airborne for 24 feet. On landing, the vehicle continued going for 138 feet until it struck a large concrete culvert. The impact fatally injured Brown.
At the point where Brown turned onto the exit roadway, there was no clear painted line marking the extreme left part of the expressway. There had been such a line but the area had been sprayed over with a dark topping several days before the accident. LaPorte testified that the topping "... was an asphalt substance that was used in placing a PMS (sealer) on the last lift of asphalt on the ramp that was tracked from the trucks and equipment back and forth across the ramp ..."
Giroir said the covered-over line was "... very, very faint ... very illegible ... it was difficult to see."
Brown apparently didn't see what little remained of this line as he drove left off the main highway. LaPorte was asked: "On August 14, 1981, what prevented the traveling public from entering this proposed entrance ramp?" He replied: "Nothing."
Andrew Ramisch, a civil engineer and director of highway engineering for a national safety institute, explained that the sealer on the left edgeline destroyed the reflectivity of the line at night.
Brown's estimated speed was 70 miles per hour when he drove off the expressway while his blood alcohol content was 0.125 per cent, a level of intoxication over the legal limit. The posted speed limit in the construction area was 35 miles per hour.
From Manhattan Boulevard toward the Greater New Orleans bridge, there were advance warning signs along the expressway. These signs, periodically placed 1,500, 1,000 and 500 feet from the construction zone, advised motorists of the road work in progress.

DUTY OWED BROWN
Appellants' up-front contention is that they owed absolutely no duty to a grossly negligent driver for injuries caused by his own wanton conduct. Such negligence, appellants believe, precludes even a reduced recovery.
The Supreme Court of Louisiana has never so held. In Burge v. City of Hammond, 494 So.2d 539 (La.1986), the Supreme Court upset a First Circuit opinion[1] which said that the highway department's duty to provide safe highways does not extend to risk of a plaintiff whose injury is caused by his or her own gross negligence and inattention. The Supreme Court stated, in reversing, that the highway *1063 department, under comparative fault, does owe a duty to the imprudent motorist even in those instances in which the driver would not have recovered under the former contributory negligence system.
Justice James Dennis, in a concurring comment, said that the Court should specifically adopt the opinion of the Second Circuit Court of Appeal in Gadman v. State of Louisiana, 493 So.2d 661 (La.App. 2 Cir.1986) insofar as it recites the correct principle of law which should govern. In Gadman, the Second Circuit said:
"... the DOTD (highway department), relying on Burge v. City of Hammond ... urges that it has no duty to protect negligent motorists. We disagree and respectfully decline to follow Burge ... Contributory negligence as a complete bar was eliminated by LSA-C.C. art. 2323 ... We believe that in the case where the fault of a motorist and the fault of a governing body responsible for warning motorists against unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable." (Underlining supplied.)
Art. 2323 reads:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
Thus, the recovery of Brown's wife and child should be reduced by the comparative degree of Brown's negligence. The trial court properly made such a reduction.
Even in cases where a motorist is substantially at fault, he can nonetheless recover something. In Molbert v. Toepfer, 550 So.2d 183 (La.1989), the Supreme Court affirmed a finding that a driver was 95 per cent responsible and the highway department five per cent negligent. The state was assessed fault for the design and signing of a highway curve.

JURY DISCRETION
This proceeding, more than most, showcases the broad discretion Louisiana civil juries have. During the eight days of this trial, jurors listened to various witnesses, including experts whose opinions varied. Appellants' main highway safety expert, John Exnicios, found the wooden barricade properly placed and that the striping on the left edge of the expressway could have been seen in spite of some coating.
On the other hand, Ramisch, petitioners' expert, testified that defects in the advance warning system created an unreasonably dangerous situation for a motorist at night because (1) the covered-over edgeline separating the expressway from the exit ramp was invisible after dark, (2) barrels were not in place guiding vehicles around the expressway curve and keeping them off the ramp under construction, (3) a barricade was not placed where the exit ramp first left the expressway proper, (4) the lights on the wooden barrier were not functioning and (5) there was no prior notice to approaching drivers that there was a ramp under construction not open to vehicular traffic.
There was also some conflict in the testimony concerning Brown's degree of impairment because of three Jack Daniel's drinks he had at the lounge. Mrs. Brown said: "I was married to the man for nine years. He did not appear in any way impaired ..."
Dr. Monroe Samuels, a pathologist and an expert in toxicology called by appellants, said a person with 0.125 per cent blood alcohol content would be impaired although he admitted that Brown, even with three drinks and driving 70 miles per hour, could have safely negotiated the expressway's construction site had an edging line been clearly visible and had barrels been placed to guide motorists around the curve.
Dr. Thomas Gilchrist, like Dr. Samuels a pathologist-toxicologist, was plaintiffs' expert witness in this area. He also testified that a driver with Brown's level of intoxication could have followed a clearly-marked line on the side of the expressway and avoided any barrels that may have been there.
*1064 The trial was lengthy; testimony is in 23 volumes. There are numerous photographs, documents, etc. in evidence. All parties were represented by very competent, well prepared attorneys. The jury could have found Brown more or less than 40 per cent at fault.
What about the defendants' liability? Two factual findings are conspicuous. Firstly, the jurors did not consider Brown's negligence so overpowering as to significantly limit recovery to his surviving wife and child. Secondly, they found negligence and/or a breach of duty on appellants' part contributing substantially to Brown's fatal accident. Acceptable testimony indicated that it was negligence not to have barrels and guardrails in place on April 14, 1981, and that it was negligence not to have clearly visible highway striping. Brown's negligence was not, as defendants' maintain, the sole cause of the accident.
We cannot say that the jury's findings were clearly wrong or not based on sufficient evidence. Likewise, we are unable to say that the apportionment of fault was beyond the jury's discretion, particularly in the absence of an attempt by either the DOTD or Barriere to reduce its percentage of liability by showing greater responsibility on the part of the other defendant.
When there are conflicts in the testimony and two or more permissible views of the evidence, the jury's choice and reasonable evaluations of credibility and inferences of fact cannot be set aside as manifestly erroneous. See Rosell v. ESCO, 549 So.2d 840 (La.1989).

QUANTUM
Appellants contend that the awards were excessive while Mrs. Brown and her daughter ask for an increase. Both sides make good arguments.
Mrs. Brown was living separate from her husband on August 13, 1981 but she said that she saw him two to four times a week and that they were consulting a marriage counselor. The Browns were never judicially separated.
The marriage counselor and Mrs. Brown testified that the Browns were trying to preserve their marriage and that Robert intended to return home the night of the accident.
Michelle, 15 years of age at the time of trial, said that she saw her father several times a week and that she had a close relationship with him. After her father's death, Michelle failed the fourth grade.
Mrs. Brown continued seeing the professional counselor, as did Michelle, through February, 1983.
Defendants called Ms. Kimberly Childress, who testified that she and Brown planned to marry following Robert's divorce from Mrs. Brown. Most jurors apparently were more favorably impressed by the testimony of Mrs. Brown and the marriage counselor and found that Brown planned a reconciliation with his wife and the resumption of a normal marriage; however, Ms. Childress' testimony may well have planted seeds of doubt in some jurors' thinking and likely caused Mrs. Brown to receive a lesser award than she feels she is entitled to.
In any event, the awards are within the jury's discretion, considering the overall testimony, and we will not disturb them.

JURY MISCONDUCT
Barriere's two special assignments of error (unrelated to the DOTD's assignments) are (1) that there was jury misconduct and (2) that the trial judge wrongly permitted evidence of another accident and photographs of post-accident safety measures.
After the trial concluded and the jury had been discharged, counsel for Barriere overheard one of the jurors, George Stewart, say that he had experienced an incident at the same location as Brown's accident. During voir dire, Stewart (and all other jurors) had been asked whether he had ever had any difficulty driving through or around any construction site or specifically the one in question. Stewart had not responded affirmatively to the inquiry.
During a motion for a new trial, Stewart was called to the witness stand. He said that 13 days after Brown's accident, he *1065 (Stewart) had driven off the expressway and onto an exit ramp and had gotten tar or oil on his automobile. Stewart did not recall this incident, he said, until the third day of trial when he saw an enlarged photograph of Brown's accident site (plaintiff exhibit No. 3).
Stewart testified that he thought his incident was at the very same spot as Brown's accident. He told other jurors about his experience. He told one juror (identified as Miss Audrey) that because she wore glasses and drove slowly, she would have been killed had she driven off the expressway where he (Stewart) drove off.
Further questioning of Stewart showed that he was in error. The incident spots were not the same (although during the trial and jury deliberations Stewart mistakenly thought they were.)
Stewart said that his encounter with an exit ramp did not affect his judgment. He based his personal verdict, he said, only on testimony and evidence admitted during the trial. Stewart said that truly he had not intentionally deceived questioning attorneys during voir dire. He just did not, at that time, remember his exit ramp episode. Stewart is a teacher at Ames Elementary School in Marrero and there is no suggestion in the record that he was dishonest or that he willfully misled questioners during voir dire.
LSA-C.C.P. art. 1972 states that a new trial shall be granted when the jury "... behaved improperly so that impartial justice has not been done."
Here, the trial judge found no intentional juror misconduct and further found that Stewart's disclosures to fellow jurors did not cause, as Art.1972 requires, impartial justice. We cannot say the trial judge erred in this regard. Louisiana jurisprudence[2] does not favor new trials, particularly when the district court judgment is supported by the testimony and evidence. The breakdown (allotment of) negligence and the amounts awarded indicate keen and very reasonable jury insight into this case's particular facts and applicable law.
In addition to juror misconduct, appellants contend that two evidentiary mistakes by the trial judge seriously tainted the jury verdict. The trial judge admitted, over objection, testimony about an allegedly dissimilar prior accident as well as photographs of the exit ramp taken during a later stage of construction after a line of barrels and a guardrail had been installed.
Prior accident testimony was given by James Gomez, who said that he had, on the night of June 15, 1981, driven off the expressway and onto the exit ramp just as Brown did two months later.
Evidence of prior accidents is admissible for the limited purpose of showing that a thing or place was dangerous and the defendant knew of this condition. See Creppel v. Louisiana Power & Light Company, 514 So.2d 239 (La.App. 5 Cir.1987), writs denied at 516 So.2d 131 (La.1987). However, to be admissible, the prior accident must be closely related in circumstances to the hazard at issue. See Creppel v. Louisiana Power & Light, supra; and Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La.App. 1 Cir.1984), writs denied at 458 So.2d 476 (La.1984). Evidence of other accidents occurring under different circumstances or conditions is irrelevant and not admissible. See Lee v. K-Mart Corp., 483 So.2d 609 (La.App. 1 Cir.1985).
There were some similarities between Gomez's accident and Brown's accident and also some dissimilarities. The area was precisely the same. On the whole, there was enough similarity to support the trial judge's decision to let Gomez testify. Before allowing Gomez to testify before the jury, the trial judge required this witness and an investigating police officer *1066 to testify out of the jury's presence. Then the trial judge gave his approval.
The trial judge did not allow another witness, Theodore Kruse, to testify before the jury, finding that Kruse's accident circumstances were not the same as Brown's.
Concerning the photographs, they do show a row of barrels and a guardrail closing the exit ramp to vehicular traffic. Appellants argue that these photographs show precautionary or remedial measures taken after Brown's accident and were used only to prejudicially show negligence and/or culpable conduct by Barriere and the highway department.
Appellees, on the other hand, contend that barrels and a guardrail were not corrective or curative measures but that they were required, according to sheet 112 of the plans, from day one of the project. Also, appellees believe the photographs support the testimony of their witnesses and discredit the testimony of defense witnesses who said the barrel and guardrail configuration would have interferred with construction vehicles and equipment using the exit ramp and would have impeded the installation of striping. When shown the objected-to photographs, LaPorte (DOTD's consulting engineer) admitted that even with the barrels and guardrail in place, there was room for trucks and highway equipment to "get through." LaPorte then said the striping was done after the barrels and guardrail were in place.
If the trial judge was inadvertent in allowing the photographs and in permitting Gomez to testify, and we are not saying he was, these errors were not of sufficient magnitude, even when combined with Stewart's alleged juror misconduct but considered in context of all the testimony and evidence, to invalidate the result of this eight-day otherwise proper trial.
The jury verdict was unanimous and apparently carefully mulled over. On review, we will not upset it. See Rosell v. ESCO, supra. The DOTD and Barriere are to equally bear costs of this appeal.
AFFIRMED.

ON REHEARING
Rehearing was granted for the limited purpose of considering Barriere Construction Company's contention that it should not be solidarily liable for sixty (60) per cent along with the Department of Transportation and Development because of applicable provisions of LSA-C.C. art. 2324(B). We agree.
The article, in part, states that when the amount of recovery is reduced by contributory negligence, "... a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed."
Accordingly, Barriere Construction Company and the DOTT are each responsible for thirty (30) per cent of the judgment in favor of petitioners.
In all other respects, the rehearing is denied.
NOTES
[1] Reported at 489 So.2d 1320 (La.App. 1 Cir. 1986).
[2] See Dieudonne v. Guidry, 336 So.2d 990 (La. App. 3 Cir.1976), writs denied at 339 So.2d 853 (La.1976); Lachney v. Jones, 373 So.2d 595 (La. App. 3 Cir.1979), writs denied at 376 So.2d 959 (La.1979); Bossier v. DeSoto General Hospital, 442 So.2d 485 (La.App. 2 Cir.1983), writs denied at 443 So.2d 1122 (La.1984); Arnold v. T.G. & Y. Stores Co., 466 So.2d 529 (La.App. 3 Cir.1985), writs denied at 470 So.2d 126 (La.1985); and Peters v. Atlanta International Insurance Company, 469 So.2d 421 (La.App. 3 Cir.1985), writs denied at 474 So.2d 949 (La.1985).