[1] We originally reversed a trial court decision in this personal injury action rendered in favor of the plaintiff against the Department of Transportation and Development (DOTD).Burge v. City of Hammond, 489 So.2d 1320 (La.App. 1st Cir. 1986). The supreme court remanded rejecting the view that no duty is owed by DOTD to an imprudent driver under comparative fault except when the motorist would also have recovered under the contributory negligence system. Burge v. City ofHammond, 494 So.2d 539 (La. 1986). No indication was given that the court disagreed with our result which we assume is the reason the case was not reversed outright. We have reconsidered the case omitting the analysis rejected by the supreme court and find that we still reach the same result. For that reason much of the language here is the same found in the original opinion. However, for convenience in writing, we do not distinguish quoted portions of the original opinion from portions new to this opinion, nor omissions from the original opinion.
[2] On April 21, 1982, at approximately 1:20 a.m. a right angle collision occurred at the intersection of U.S. 51 (Railroad Avenue) and U.S. 190 (West Morris Street) in the City of Hammond. U.S. 51 is a two lane, two way highway that runs in a north-south direction. U.S. 190 is a two lane, one way street for eastbound traffic. On the date of the accident during the hours of 5:30 a.m. to 11:30 p.m. the intersection was controlled by a semaphore light which operated in a continuous mode (amber, red, green). From 11:30 p.m. to 5:30 a.m. the light operated in a flashing mode. The traffic light was properly operating in a flashing mode when the accident occurred. Both drivers had an unobstructed view of the traffic light.
[3] Donna Burge, driving a 1981 Buick, approached the intersection heading south on U.S. 51 which at that point was controlled by a flashing red light. Thomas Geer, driving a pickup truck, was heading east on U.S. 190 approaching the intersection which for him was controlled by a flashing amber light. The Burge and Geer vehicles collided at the intersection, resulting in severe personal injuries to Burge.
[4] Burge filed suit against the City of Hammond, Allstate Insurance Company (the liability insurer of Geer), and the DOTD. Allstate filed a third party action against the City of Hammond and DOTD.
[5] Summary judgment was granted in favor of the City of Hammond since the intersection was under the sole control and custody of DOTD. A summary judgment was also granted in favor of Allstate. No appeals were taken from either summary judgment. The case proceeded to trial with DOTD as the sole defendant.
[6] The trial court determined that DOTD was negligent and rendered judgment against the department in the amount of $2,113,591. 19. Fifty percent negligence *West Page 154 
was attributed to Burge for failing to yield the right of way thereby reducing the damages awarded to $1,056,795.59. From this judgment DOTD appeals.
[7] THE CONDUCT OF BURGE
[8] All persons must comply with the instructions or directions of authorized traffic control devices. La.R.S. 32:56(B); La.R.S.32:231(A). A motorist whose approach to an intersection is controlled by a flashing red signal "shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or if none, then before entering the intersection." La.R.S. 32:234(A)(1). The driver must then "yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard." La.R.S. 32:123(B). La.R.S.32:234(A)(2) provides that a driver may proceed through or past a flashing amber signal only with caution.
[9] Upon approaching the intersection on U.S. 51 from the north there is a stop bar located north of a pedestrian crosswalk 23'4" north of the extended north curb line of U.S. 190. When the light is in a continuous mode a driver going south on U.S. 51 faced with a red light would stop at the stop bar and wait for the light to change, while allowing pedestrian traffic to cross. Traffic approaching from the west cannot be observed at this point. Thus, a driver seeking to enter the intersection would have to rely totally on a green light on U.S. 51 meaning that traffic on U.S. 190 is faced with a red light and will stop in obedience to the red light. When the light is in a flashing mode the driver on U.S. 51 with the flashing red has to approach the intersection with the knowledge there is no timed stop for U.S. 51 or U.S. 190 traffic. Consequently, it is the duty of the driver to stop at a point where visual observation can be made of traffic approaching or entering the intersection on U.S. 190. The driver controlled by the flashing red light is under a duty to yield the right of way to such traffic before entering the intersection.
[10] The trial court found that Burge stopped at the stop bar located 23'4" north of the extended curb line of U.S. 190. At this point Burge's view of traffic approaching or entering the intersection on U.S. 190 was totally obstructed by a building located on the northwest quadrant of the intersection. The south edge of the building is located 18'8" from the north curb of U.S. 190. The trial court stated: "Rather than pulling up further and stopping again to get a better view of approaching traffic, Mrs. Burge simply pulled off, as she was in the habit of doing during the day."[1]
[11] Photographs admitted as evidence depict the driver's view of the intersection with the automobile positioned in a southerly direction on U.S. 51 with the front bumper located approximately ten feet from the northern extended curb line of U.S. 190. Despite the partial sight obstruction caused by the bushes and utility poles, it is evident that an attentive driver would have a good view of the intersection itself and of traffic approaching the intersection on U.S. 190 from at least 544 feet west of the intersection (to the driver's right).
[12] The investigating officer testified that the impact speed of Burge's vehicle was 30 miles per hour. Dr. Olan Dart, an expert in traffic engineering, estimated the impact speed of Burge's vehicle to be twenty-five miles per hour. He further stated that the achievement of an impact speed of twenty-five miles per hour from a dead stop approximately twenty-five feet from the intersection would require acceleration at a *West Page 155 
rate commonly referred to as "digging out". Additionally, the headlights of both vehicles were on when the accident occurred. Photos of the intersection taken at night from U.S. 51 illustrate the clear visibility of headlights of vehicles traveling easterly on U.S. 190.
[13] Upon review of the record we find that the trial court correctly determined that Burge was negligent. Burge would have been able to obtain a clear view of the intersection and approaching traffic had she exercised ordinary care and reasonable prudence. Instead, she entered the intersection at a very fast rate of acceleration from a point where her view of approaching traffic was totally obstructed. She failed to yield the right of way to Geer thus causing the collision and her ensuing injuries.
[14] LIABILITY OF DOTD
[15] a) Duty of DOTD To The Plaintiff
[16] The primary issue on appeal is the liability of DOTD. Eleven right angle collisions occurred at this intersection from October, 1981, through July, 1982, between 11:30 p.m. and 5:30 a.m. while the traffic signal operated in a flashing mode. Based on the accident history of this intersection the trial court determined the flashing light to be a "substantial contributing cause of the accident." The court further stated that the duty of DOTD was "to study, inspect, improve and maintain the traffic control light at this intersection for the purpose of preventing the type of accident that, in fact, occurred. The risk of such an accident was certainly within the ambit of this duty."
[17] DOTD was held liable under theories of negligence (La.C.C. art. 2315) and strict liability (La.C.C. art. 2317). The distinction between recovery under these theories is that under strict liability the plaintiff is relieved of proving that the owner or custodian of the thing which caused the damage knew or should have known of the risk involved. Kent v. Gulf StatesUtilities Co., 418 So.2d 493 (La. 1982). Plaintiff must still prove under both theories that: (1) defendant owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; and (3) causation. Farr v. Montgomery Ward and Co.,Inc., 430 So.2d 1141 (La.App. 1st Cir.), writdenied, 435 So.2d 429 (La. 1983).
[18] The control and knowledge of DOTD are not at issue here. It is uncontroverted that DOTD knew that the traffic signal operated in the flashing rather than continuous mode between the hours of 11:30 p.m. and 5:30 a.m. from October, 1981, through July, 1982. Consequently, the duty of the department to protect against injuries resulting from the risk created by signalization of the intersection in the flashing mode is the same whether analyzed under negligence or strict liability concepts. Kent, 418 So.2d at 497; Buchanan v. Tangipahoa Parish Police Jury,426 So.2d 720 (La.App. 1st Cir. 1983).
[19] The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case. . . . (T)he standard for determining liability
is to presume the owner's knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner's conduct in light of that presumed knowledge.
[20] Kent, 418 So.2d at 497 (emphasis original). Accordingly, in order to determine whether the signalization of this intersection created an unreasonable risk of harm to others we would need to consider not only the number of accidents which have occurred, but reasons why the State determined the flashing was a desirable mode during hours it was implemented. These would include factors such as assisting flow of traffic in minimum use hours by not requiring a timed stop, and safety considerations for persons required to make a timed stop during the hours when few people would be around to provide protection. SeeEntrevia v. Hood, 427 So.2d 1146 (La. 1983). Under the circumstances of this case, however, we do not find it necessary to determine *West Page 156 
whether the signalization created an unreasonable risk of harm to some, since it is our conclusion that even if it did, this plaintiff does not fall within the class entitled to the protection which the duty of signalization affords, since she in no way obeyed the signalization provided.
[21] All rules of conduct . . . exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury.
[22] Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60, 73 (1956). See also, Hill v. Lundin Associates, Inc.,260 La. 542, 256 So.2d 620 (1972). The question of liability hinges on the duty, if any, owed by DOTD to thisparticular plaintiff. Farr, 430 So.2d at 1143.
[23] DOTD is not responsible for all accidents occurring on state highways. It does not guarantee the safety of persons traveling on state highways, nor does it serve as an insurer against all injuries resulting from obstructions or defects thereon. Generally, DOTD has the duty to construct and maintain state highways in a condition which is reasonably safe for persons exercising ordinary care and reasonable prudence.United States Fidelity and Guaranty Co. v. State, Departmentof Highways, 339 So.2d 780 (La. 1976). Where inadequate or improper signalization of an intersection creates an unusually hazardous risk to a driver exercising ordinary care and prudence, DOTD may be liable for damage caused by that hazardous condition.[2] Hodges v. State, Department of Highways,370 So.2d 1274 (La.App. 3d Cir.), writ denied, 374 So.2d 660
(La. 1979). However, the duty owed by DOTD does not include the obligation to protect a plaintiff against harm which would not have occurred but for the grossly negligent operation of the motor vehicle by plaintiff. See Hessifer v. SouthernEquipment, Inc., 416 So.2d 368 (La.App. 1st Cir.), writdenied, 420 So.2d 982 (La. 1982). Upon review of the record we agree with that portion of the judgment holding Burge negligent. However, 50% negligence cannot be attributed to DOTD with respect to Burge.
[24] Comparative negligence does not change duty/risk analysis. The duty must still encompass the risk to the class of which the plaintiff is a member or there is no percent of negligence as to that plaintiff while there might be to others for the same conduct. Professor Alston Johnson, in his analysis of the effect of comparative negligence on duty/risk concluded:
[25] (T)ort cases may be divided into three broad categories: (a) those in which a defendant's duty extends to the protection of a plaintiff against his own carelessness; (b) those in which defendant is not liable because the plaintiff's conduct has produced a situation for which the law should not require a reasonably prudent person to prepare and respond; and (c) those that fall in neither category, in which the victim's fault and the defendant's fault may each be weighed in the balance.
[26] Johnson, Comparative Negligence and the Duty/RiskAnalysis, 40 La.L.Rev. 319, 333 (1980). He concluded that in (a) cases comparative will not reduce the award, in (b) cases comparative will not allow an award even at a reduced level[3]
and in (c) cases *West Page 157 
comparative will weigh fault. There seems to be general agreement with the Johnson analysis. See Dulaney v.Travelers Insurance Co., 434 So.2d 578 (La.App. 1st Cir. 1983); Frain v. State Farm Insurance Co., 421 So.2d 1169
(La.App. 2d Cir. 1982). The real problem now is to fit the case to the category.
[27] In the area of signals it is probably true that DOTD could always do more. However, it is an unreasonable burden to make DOTD liable for additional signals where the plaintiff involved does not heed those that are present. It seems clear that this type case should fall under the type (b) classification. We hold that the department's duty to maintain highways in a reasonably safe condition which includes adequate signing and signaling does not extend to the risk of a plaintiff whose injury is caused by her own gross negligence and inattention to a properly working, clearly visible, traffic signal.
[28] b) Causation
[29] Under Farr, 430 So.2d at 1141, the breach of a duty, if any, owed to a plaintiff results in recovery to plaintiff only where the breach is a cause of plaintiff's injury.See also, Duffy v. State Department of Transportation andDevelopment, 415 So.2d 375 (La.App. 1st Cir.), writdenied, 420 So.2d 448 (La. 1982).
[30] Burge had traveled through this intersection heading south on U.S. 51 five times per week from November, 1981 to the time of the accident. She was unable to remember whether she had previously driven through the intersection at night during which time the signal light was in a flashing mode. However, Burge testified that she was aware that she had to stop for a flashing red light and ascertain that the intersection was clear of oncoming traffic before she could safely enter the intersection. Burge contends in brief that had the intersection been controlled by a continuous stop light both she and Geer would most probably have obeyed the continuous signal and the accident most probably would not have occurred. She has not alleged that the flashing red light created a state of confusion by which she was unable to determine when or whether to proceed through the intersection. Plaintiff's expert, Evans, stated that in his opinion drivers tend to obey a continuous signal light more than they do a flashing red light. He was, however, unable to refer to any study or data which supported this conclusion. Dr. Dart was also unaware of any studies or data which could support Evans' statement.
[31] We know of no jurisprudential presumption to the effect that had additional or different signals been used the driver would have obeyed them or that the failure of the state to provide additional or different signalization of the intersection is always the cause of an accident occurring at that intersection. See Kennison v. State, Department ofTransportation Development, 486 So.2d 267 (La.App. 3d Cir.), writ denied, 489 So.2d 917 (La. 1986); Vallotv. Touchet, 337 So.2d 687 (La.App. 3d Cir. 1976). After thoroughly reviewing the record we are unable to state that the accident would probably not have occurred but for the state's failure to provide additional signalization. We find that the accident was caused by Burge's failure to stop where she could ascertain that the intersection was clear of traffic before she proceeded through, which was her duty in response to a properly working blinking red light. This failure was the sole cause of the accident. The absence of a continuous red light being a cause of the accident is based on conjecture unsubstantiated by the evidence.
[32] Accordingly, we reverse that portion of the judgment holding DOTD liable. Costs of this appeal are assessed against plaintiff.
[33] REVERSED AND RENDERED.
[1] Speed at impact necessitated this finding or a finding that Burge did not stop at all. Questionable testimony of an alleged eyewitness indicated that Burge did stop. The trial court accepted this part of the eyewitness testimony (Burge herself having no recollection). However, the trial court rejected the testimony of the witness that Burge stopped right at the intersection rather than at the stop bar. If Burge did not stop at all, her failure to obey the flashing red light would be the sole cause of the accident. If she stopped where the witness testified, the sole cause of the accident obviously would not have been the type of signal but her failure to see what was clearly there to be seen upon obeying the signal. However, the opinion analyzes the duties based on the facts found by the trial court.
[2] In Hatcher v. State Through Department of Transportation Development, 467 So.2d 584 (La.App. 3d Cir. 1985) plaintiff entered an intersection under a flashing yellow light and collided with a vehicle which had entered the intersection under a flashing red light. The intersection had a history of frequent right angle collision The court found that plaintiff was within the class of persons to whom DOTD owes a duty to provide safe highways. DOTD breached that duty (proper signalization) and was. therefore, liable. The duty of DOM to the motorist entering an intersection under a flashing red light was not at issue inHatcher. In Holt v. Singletary, 441 So.2d 330
(La.App. 5th Cir. 1983) the court did not discuss the plaintiff's conduct but assumed it was a covered risk.
[3] A good argument can be made that in category (b) cases there is simply no negligence on the part of the defendant. However, based on Hatcher, 467 So.2d 584, we cannot say that the same facts would not produce a degree of negligence on the part of DOTD in favor of the driver with the amber light. *West Page 158