625 So.2d 638 (1993)
Patricia A. LAMAIRE, et al., Plaintiffs-Appellants,
v.
The MOTOR CONVOY, INC., et al., Defendants-Appellees.
No. 92-1367.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
*640 Timothy A. Jones, Lafayette, for Patricia Lemaire A., et al.
L. Lane Roy, Lafayette, for the Motor Convoy, et al.
Thomas Reginald Hightower Jr., Lafayette, for City of Lafayette.
Steven Michael Jankower, Lafayette, for Parish of Lafayette.
William Martin Hudson III and Patrick Bayard McIntire, Lafayette, for State, DOTD.
Before DOUCET, KNOLL and DECUIR, Judges.
KNOLL, Judge.
This is an appeal from wrongful death and survival actions arising out of a fatal vehicular accident. Mary B. Ardizone's four major daughters, Patricia A. Lemaire, Joanne Vining, Mary Lou Boudreaux, and Theresa Zeringue, sued for their mother's wrongful death which occurred while she was a passenger in a car driven by Vivian Telotta. Mrs. Ardizone and Mrs. Telotta were killed when Mrs. Telotta's car collided with an 18 wheeler car carrier.
Initially made defendants were Charlie E. Stewart, the driver of the truck, The Motor Convoy, Inc., the owner of the car carrier, its insurer, Liberty Mutual Insurance Company, the Lafayette Parish Police Jury, the City of *641 Lafayette, and the State Department of Transportation and Development (DOTD). At trial, DOTD was the sole remaining defendant. Mrs. Telotta's children's suit, in which we render a separate opinion, is consolidated with the present case.
After the plaintiffs rested their case, DOTD moved for an involuntary dismissal pursuant to LSA-C.C.P. Art. 1672(B). The trial court granted the motion, dismissing plaintiffs' case and issued judgment accordingly. The trial court denied plaintiffs' subsequent motion for a new trial. Plaintiffs now appeal the trial court's judgment. For reasons which follow, we affirm the judgment of the trial court.

FACTS
On September 25, 1987, Mrs. Telotta and Mrs. Ardizone departed their Jeanerette homes in Mrs. Telotta's car to shop in Lafayette at the Acadiana Mall. Near noon, they were involved in a fatal automobile accident while leaving the Mall. A road encircles the mall, with U.S. Highway 167 more or less paralleling the circular road on the northwest side of the mall. Three roads, Sears Drive, Middlepark Drive, and Goudchaux Drive connect the circle and Highway 167. At these intersections, Highway 167 is a bidirectional four lane highway with a median as well as left turn lanes, right turn lanes on the mall side, and wide shoulders.
The accident occurred at the point where Goudchaux Drive intersects Highway 167 at a right angle. This intersection was controlled by a plainly visible, unobstructed standard stop sign at the time of the accident. Fountainhead Drive intersects Highway 167 opposite Goudchaux Drive.
Although no eyewitnesses testified at trial, we discern from the record that Mrs. Telotta, 75 years of age, was proceeding slowly across Highway 167 from Goudchaux Drive when a northbound 18 wheeler struck her automobile in right angle fashion. The record shows that her automobile had passed the first lane and entered the middle lane of Goudchaux Drive, the lane designated for motorists intending to completely cross Highway 167 or to make a left turn after crossing the northbound lanes and the median. The record shows that the 18 wheeler was travelling within or below the posted 50 MPH speed limit.
At the time of the accident, a clearly visible stop sign was stationed at the Goudchaux intersection. However, the City of Lafayette and DOTD had recommended signalization for the intersection, and installation of a traffic light was pending. The traffic light was not installed until March 30, 1988, several months after the September 25, 1987, accident. Plaintiffs admit that Mrs. Telotta erred through momentary inadvertence, misobservation or misjudgment of time, speed, or distance of approaching traffic, but contend that DOTD was negligent in failing to install a traffic light at the intersection prior to the accident. They argue that a traffic light would have prevented the accident. Plaintiffs did not plead strict liability as an alternative cause of action.
After the plaintiffs' rested, the trial court granted DOTD's motion for an involuntary dismissal. The trial court stated that under Burge v. City of Hammond, 509 So.2d 151 (La.App. 1st Cir.1987), writ denied, 513 So.2d 285 (La.1987), DOTD's duty to maintain highways in a reasonably safe condition, which includes adequate signalling, does not include the obligation to protect a plaintiff against harm which would not have occurred but for the grossly negligent operation of the motor vehicle. The trial court found that Mrs. Telotta either disobeyed the properly installed, visible stop sign, or entered the wide open, unobstructed intersection without looking to her left in order to see the approaching truck. The trial court found DOTD free from liability, finding that Mrs. Telotta's negligence was the sole legal cause of the accident. It classified her negligence as gross negligence. The trial court noted the lack of evidence causally linking the absence of a traffic light to the fatal accident, and found that the intersection was not hazardous or unreasonably dangerous.
Plaintiffs appeal the judgment of the trial court, asserting that the trial court erred in: 1) its interpretation and application of the law pertinent to plaintiffs' recovery against DOTD; 2) finding Mrs. Telotta grossly negligent; *642 3) finding the intersection not unreasonably dangerous; and, 4) denying plaintiffs' motion for a new trial.

INVOLUNTARY DISMISSAL
LSA-C.C.P. Art. 1672(B) allows a party, after the plaintiff has completed the presentation of his evidence, to move for a dismissal of the action as to him on the ground that upon the facts and law plaintiff has shown no right to relief. In non-jury cases, the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. We should not reverse a dismissal based on LSA-C.C.P. Art. 1672(B) in the absence of manifest error. Shafer v. State, Through DOTD, 590 So.2d 639 (La.App. 3rd Cir.1991).
Duty/risk analysis applies to cases such as the present. To recover under a negligence theory, plaintiffs must prove that the condition complained of was patent or obviously presented an unreasonable risk to prudent drivers and that DOTD had actual or constructive notice of the defect and failed to correct it within a reasonable time. Holt v. Singletary, 441 So.2d 330 (La.App. 5th Cir.1983). Generally, DOTD has the duty to construct and maintain state highways in a condition which is reasonably safe for persons exercising ordinary care and reasonable prudence. Since contributory negligence as a complete bar to recovery has been replaced by a comparative negligence system, not only may prudent and attentive motorists recover for DOTD's negligence, but even those who are slightly exceeding the speed limit, those who are momentarily inattentive, or those who are negligent may recover from DOTD in accordance with comparative fault principles.[1]Brown v. State Through DOTD, 572 So.2d 1058 (La.App. 5th Cir.1990), writ denied, 581 So.2d 710 (La.1991); Burge, supra; Ledbetter v. State, Dept. of Transp. & Dev., 502 So.2d 1383 (La.1987); Gadman v. State Through D. of Transp. & Dev., 493 So.2d 661 (La.App. 2nd Cir.1986), writ granted in part, 497 So.2d 1001 (La.1986); Molbert v. Toepfer, 550 So.2d 183 (La.1989). Of course, DOTD is not responsible for all accidents occurring on state highways, does not guarantee the safety of persons traveling on state highways, and does not serve as an insurer against all injuries resulting from obstructions or defects thereon. Brown, supra; Burge, supra; Holt, supra.
Plaintiffs attack the trial court's decision, contending that it relied on Burge, supra, to find that DOTD owes no duty to protect grossly negligent motorists. We find plaintiffs' interpretation of the trial court's decision incorrect and affirm the trial court's finding of lack of causation and lack of an unreasonable risk of harm.
First, we cannot find that the trial court erred in concluding that Mrs. Telotta's actions, not the absence of a traffic light, was the cause of the accident. When confronted with the stop sign, Mrs. Telotta had a duty to stop and ascertain whether the way was clear for her to make safe passage across the intersection. Askew v. Hamilton, 146 So.2d 471 (La.App. 3rd Cir.1962). Duaine Evans, plaintiffs' expert consulting traffic engineer, and plaintiffs in brief admit that Mrs. Telotta either misjudged the distance or speed of the oncoming vehicle or inadvertently ignored the clearly visible stop sign.
Plaintiffs argue that had DOTD installed a traffic light, the accident would not have occurred. However, as noted in Burge, supra, no presumption exists that had an additional or different signal been used, the driver would have obeyed it or that the absence of a certain signal is the cause of the accident. Plaintiffs presented no evidence other than Evans' conclusory statement that Mrs. Telotta would have obeyed a traffic light, and this unsupported assertion does not convince us that the trial court committed manifest error in finding that the sole cause of the accident was Mrs. Telotta's negligence.
*643 Secondly, plaintiffs assert that the trial court erred in finding no defects or hazardous conditions in the intersection or signs. The standard for evaluating whether an unreasonably dangerous condition exists involves a balancing of claims and interests, a weighing of the risk and the gravity of harm, and consideration of individual and societal rights and obligation. Gadman, supra.
Plaintiffs emphasize the fact that the City and DOTD recommended signalization at the intersection prior to the September, 1987 accident, but at the time of the accident the light had yet to be installed. The Acadiana Mall informed the DOTD of the apparent need for a stop-go light after two fatal accidents occurred at the intersection, one on April 26, 1984, and another on August 6, 1985. On August 13, 1985, DOTD requested the City of Lafayette to conduct a traffic engineering study of the Goudchaux, Middlepark, and Sears Drive intersections.
Dean Tekell, the transportation engineer for the City of Lafayette, Department of Public Works, followed the guidelines of the Manual on Uniform Traffic Control Devices and accepted procedures of DOTD. The manual is a handbook for signals and other traffic control devices, mandated for use by DOTD by LSA-R.S. 32:235(A). It provides extremely persuasive authority for DOTD. See, Hatcher v. State Through Dept. of Transp., 467 So.2d 584 (La.App. 3rd Cir. 1985), writ granted in part and denied in part, 471 So.2d 724 (La.1985).
The manual in effect at the time the studies were conducted contained eight warrants pertaining to stop-go lights,[2] only one of which needs to be met to indicate that a light may be needed at the intersection. Not only must a warrant be met, but additionally, sound traffic engineering judgment, i.e., knowledge and experience, applied to the data produced by the traffic study must yield the conclusion that the advantages of the light outweigh the possible disadvantages and that safety justifies signalization.
All agree that a traffic light at the intersection was both warranted and justified based on the high volume of traffic (Warrant 1) and on operating conditions where traffic volumes on the major street are so heavy that traffic on the minor intersecting street suffers excessive delay or hazard in entering or crossing the major street (Warrant 2).
Despite high traffic volumes and a high exposure rate, the record shows that the actual accident rate was low. Indeed, Tekell testified that the average accident rate for intersections in Lafayette is 2.5 per million entering vehicles, whereas the rate at the intersection at issue was 0.9 per million entering vehicles. Furthermore, Warrant 6 Accident Experience, the warrant most directly concerned with safety considerations, was not satisfied at the intersection in question. Warrant 6 requires the occurrence of 5 or more reported accidents of types susceptible to correction by traffic signal control within a 12 month period.
The testimony of Lawrence Harry, district traffic operations engineer for DOTD, shows that the intersection never had 5 or more accidents susceptible to correction by a traffic light in any 12 month period. He testified that 1984 brought 3 accidents at the intersection, 1 being a fatal accident, but only 2 were susceptible to correction. In 1985, 3 of 7 total accidents were susceptible to correction by signalization. One of the 7 accidents involved a fatality. Moreover, plaintiffs' expert, Evans, testified that the location of the stop sign, construction of the intersection, color and striping of the roadway, and speed limit were appropriate. He did not know whether the volume of traffic was high that day. In light of this evidence, we cannot conclude that the trial court committed manifest error, in finding that plaintiffs failed to prove that the Goudchaux intersection was hazardous or unreasonably dangerous.
After considering traffic volumes and movements, the geometry of the intersection, speeds, accidents, delays, and after applying his judgment, Tekell recommended *644 by letter dated July 14, 1986, installation of a traffic light at the intersection in question. Harry received this letter on July 29, 1986. After his own investigation, Harry, on May 13, 1987, recommended installation of a light at the intersection. Installation began on March 17, 1988, and was completed on March 30, 1988, approximately 10½ months after the DOTD's recommendation and a few months after the fatal automobile accident. Plaintiffs argue that the delays were unreasonable.
Tekell testified that installation typically occurs within 18-24 months of scheduling, at times within 2-3 years. Harry testified that the normal installation procedure is 2 years from scheduling. He testified that after his recommendation, the chief engineer must approve signalization which must be scheduled by a traffic services engineer. Both testified that the light was installed within the expected time frame, considering usual administrative delays. Harry did not recall a request to expedite or prioritize installation of a signal at the intersection in question. Our careful review of the record leads us to conclude that DOTD took the necessary steps to assure signalization within a reasonable time period.
Finally, plaintiffs contend that the trial court erred in denying their motion for new trial. We find this assignment of error meritless as plaintiffs have pursued this appeal from the final judgment and our careful review of the record shows no error on the part of the trial court.
For the above and foregoing reasons, we affirm the judgment of the trial court dismissing plaintiffs' claims against DOTD. Costs are taxed to plaintiffs.
AFFIRMED.
NOTES
[1] Under the doctrine of comparative fault as codified in LSA-C.C. Art. 2323, if a person suffers injury as a result of his own negligence and partly as a result of the fault of another, his claim for damages shall not be defeated, but rather reduced in proportion to the percentage of negligence attributable to him.
[2] The eight warrants are: Warrant 1Minimum Vehicular Volume; Warrant 2Interruption of Continuous Traffic; Warrant 3Minimum Pedestrian Volume; Warrant 4School Crossing; Warrant 5Progressive Movement; Warrant 6 Accident Experience; Warrant 7Systems; Warrant 8Combination of Warrants.