905 So.2d 294 (2004)
Sheila A. JACQUES
v.
The STATE of Louisiana through the DEPT. OF TRANSPORTATION AND DEVELOPMENT.
No. 2003 CA 2226.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
Rehearing Denied November 9, 2004.
*295 Michael K. Heltz, Bruce G. Mohon, Gramercy, for Plaintiff-Appellee, Sheila A. Jacques.
Michael D. Zelden, Baton Rouge, for Defendant-Appellant, The State of Louisiana through the Dept. of Transp. and Development.
Before: CARTER, C.J., PETTIGREW, and MCDONALD, JJ.
CARTER, C.J.
This appeal involves the review of a one-vehicle accident allegedly caused by an inadequately signaled intersection. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
On the night of May 23, 1994, a one-vehicle accident occurred at the "T" intersection of La. Hwy. 3127 and La. Hwy. 70 in Ascension Parish. Plaintiff, Sheila A. Jacques, was driving her new 1994 Toyota Corolla northbound on Hwy. 3127, a relatively straight, two-lane, blacktop road in a rural area, marked with a speed limit of 55 miles per hour. It was near midnight and Hwy. 3127 was dark and deserted. Ms. Jacques had been awake since 5:00 a.m. that morning, had worked a twelve-hour shift as a security guard, had driven home to Convent, Louisiana from work, and then gone back out to a club in Back Vacherie to meet a friend. The accident occurred when Ms. Jacques was driving home from the club in Back Vacherie.
Ms. Jacques decided to drive on Hwy. 3127 to return to her home that night even though she had never before driven alone on that particular road. Although she was not familiar with the road, Ms. Jacques knew that she needed to make a right turn at some point to reach her home. Ms. Jacques alleges that she was traveling approximately 45 miles per hour as she approached the "T" intersection. She passed, without seeing, an oversized "stop ahead" sign, located approximately 750 feet before the intersection. She never saw the yellow and black double-arrow sign, with adjacent hazard signs marking the ditch that was located across and directly in front of her on the opposite side of the intersection. She also passed, without seeing, a state highway "junction" sign before realizing that there was an oversized "stop" sign at the intersection. Ms. Jacques did not see the stop sign until it was too late. She applied her brakes, skid through the intersection, and crashed into the north embankment of the ditch located *296 parallel to Hwy. 70. As a result of the impact, Ms. Jacques sustained serious injuries to both of her ankles. Her vehicle was a total loss.
Ms. Jacques filed suit against the State of Louisiana, through the Department of Transportation and Development (DOTD), as custodian of the "T" intersection, alleging under theories of strict liability and negligence, that the intersection was unreasonably dangerous. Ms. Jacques contended that the intersection was defective in that there were inadequate warnings, other than the stop sign, to put her on notice of the fast approaching, dark intersection so that she could make a safe and controlled stop without sliding into the ditch embankment. Ms. Jacques further alleged that the lack of lighting made the intersection unreasonably dangerous, warranting the need for more of a warning for any motorist approaching the intersection. After a bench trial, Ms. Jacques was awarded total damages in the amount of $904,277.67, subject to a 25% reduction for her percentage of fault. DOTD appeals, arguing that the trial court was clearly wrong in finding it had any liability and apportioning 75% fault to DOTD when the evidence showed the intersection was not hazardous or unreasonably dangerous.

EVIDENCE
At trial, Ms. Jacques testified that the weather was clear on the night of the accident. There was no rain, no fog, and no traffic. She was driving with her low beam headlights on, as she always did. Ms. Jacques claimed that she saw no signs at all as she approached the intersection, when she suddenly encountered the red stop sign, but it was too late to stop. Ms. Jacques denied drinking any alcoholic beverages that day or night, denied taking any medication that would have affected her driving, and denied falling asleep while driving. She maintained that she was alert while searching for her turn, but that it was extremely dark.
Dr. Olin K. Dart, an expert in traffic engineering and safety, highway safety design, and accident reconstruction, testified at trial on behalf of Ms. Jacques. Dr. Dart testified that the oversized stop ahead sign, the junction sign, and the oversized stop sign were installed at the intersection when Hwy. 3127 opened in 1987. Dr. Dart also testified that DOTD records indicated that an overhead red-flashing beacon light was recommended and approved for this particular intersection, but had not been installed at the time of this accident. The flashing beacon light was installed four months after this accident occurred. Dr. Dart opined that had the flashing beacon light been present, then this accident might not have happened. He stated that active warning devices such as flashing beacon lights put motorists on notice that an intersection is ahead. He contended that flashing beacon lights are much more effective warning devices than passive signs. He also testified that a driver would notice a flashing beacon light before noticing a stop sign when approaching the intersection. Thus, Dr. Dart concluded that the absence of the flashing beacon light at the end of this long and dark highway, with a posted speed limit of 55 miles per hour, was a contributing factor to this accident.
Dr. Dart acknowledged that the intersection had no vision obstructions, that the road was relatively straight approaching the intersection, and that the stop ahead and stop signs were oversized (48") as opposed to the conventional size (30") for those signs. Dr. Dart stated that the criteria for using an oversized sign relates to the approach speed of the traffic. He stated that the idea was to make sure the motorist could see the intersection. Dr. *297 Dart admitted that the signs existing at the intersection at the time of the accident met all of the requirements found in the Manual of Uniform Traffic Control Devices (MUTCD), and he acknowledged that there were no flaws in the design of the intersection. Dr. Dart also testified that on low-beam headlighting, Ms. Jacques should have seen the stop sign at least 150 to 200 feet away.
The state trooper who investigated the scene of the accident was Sergeant Michael C. Jewell. Sgt. Jewell testified that he was notified of the accident at 1:25 a.m., almost two hours later than Ms. Jacques claimed the accident occurred. By the time Sgt. Jewell arrived at the scene, Ms. Jacques had been transported to the hospital. Sgt. Jewell confirmed that there were no vision obstructions at the intersection and the weather was clear and dry. Sgt. Jewell testified that he measured the skid marks for Ms. Jacques's car and found the marks to be 71 feet long for the front right tire. He also testified that he believed the cause of the accident was driver error in that Ms. Jacques failed to maintain control of her vehicle. He issued a citation to Ms. Jacques at the hospital, although he did not speak to her. He stated that Ms. Jacques must have been inattentive or distracted in some way because she did not apply her brakes until she was too close to the stop sign to safely stop. Sgt. Jewell also verified that the stop sign was present and had no apparent vision obstructions or defects at the time of the accident.
The deposition testimony of District Maintenance Engineer for DOTD, Thomas Buckley, was introduced at trial. Mr. Buckley stated that he was familiar with this particular two-lane rural intersection, because he was the engineer who recommended that the flashing beacon light be installed when Hwy. 3127 was built in 1987. He originally recommended the beacon because it was a dark, rural area and he believed, using engineering judgment, that the beacon would help drivers to further identify the intersection. He testified that his recommendation was ultimately authorized, but the beacon was not installed until September 29, 1994, four months after this accident occurred. Mr. Buckley testified that the delay in the installation of the flashing beacon was due primarily to the lack of electric power at the intersection.
Mr. Buckley confirmed that the MUTCD did not require the use of a beacon signal at this type of intersection. He stated that, in fact, the MUTCD only required the use of conventional 30" signage at this intersection. A decision was made to install the oversized 48" signs because the intersection was new to motorists and the speed on the road leading to the intersection was 55 miles per hour. He testified that an oversized stop ahead sign is only required when there are obstructions limiting a driver's visibility approaching the intersection. That was not the case in this instance, but the stop ahead sign was installed at the same time the road opened in 1987 to bring more attention to the new intersection. Mr. Buckley testified that the yellow and black hazard signs across the back of the intersection, along with the large double-arrow sign, also marked the "T" intersection for drivers. Mr. Buckley admitted that his recommendation for the flashing beacon light was really "overkill" because of the existence of the other signs that were already in place, but he still felt it was a good recommendation from a safety/awareness standpoint.
The deposition testimony of DOTD's sign crew supervisor, Calvin Carney, was also used at trial to establish that the various signs had been installed at the intersection prior to the accident. The Hwy. 70 route marker sign with a double *298 arrow located adjacent to the oversized stop sign was erected in 1987 when the intersection was opened. The oversized stop sign was dated 1992, and the oversized stop ahead sign was dated November 20, 1987. The junction sign located between the oversized stop ahead sign and the oversized stop sign was dated 1990. Thus, Mr. Carney's sign inventory revealed that all of the signs were in place before the accident occurred.
DOTD offered the testimony of Vernon Dean Tekell, an expert in traffic engineering, accident reconstruction, highway design, and highway safety. Mr. Tekell testified that Hwy. 3127 provided a long, clear view of the intersection, several hundred feet beyond the stop ahead sign located 750 feet away from the intersection. Mr. Tekell confirmed, as did the other expert witnesses, that the existing signage at the intersection and leading up to it met and exceeded all of the requirements of the MUTCD. He verified that oversized signs are not required, but they are often used when there is a high-speed approach. Mr. Tekell also testified that the stop ahead sign was not necessary at this intersection because the approach was straight and level and the stop sign was clearly visible. He stated that the stop ahead sign was redundant, but was another level of advance warning of the intersection, emphasized by the oversized signage. Mr. Tekell additionally testified that the "T" treatment, double-arrow signs with hazard markers, were not required by the MUTCD in this instance, but those signs provided another level of communication with the driver, emphasizing the intersecting roadway.
Mr. Tekell offered his opinion that the illumination of the signs in this dark area would have provided a very good contrast for visibility. He stated that the illumination would be visible for 150 to 500 feet with low beam headlights. He testified that he personally viewed the stop sign 900 feet away with his headlights on high beam. Mr. Tekell stated that there are no specific requirements for the installation of a flashing beacon light at this type of intersection, and that the beacon signal provides an additional, redundant warning, just like the stop ahead and junction signs, all calling more attention to the intersection. Mr. Tekell acknowledged that a nighttime driver would be more likely to see an active control device such as the flashing beacon light than the passive stop sign. However, Mr. Tekell testified that the absence of the flashing beacon light at the time of the accident did not necessarily mean the intersection was unsafe. Mr. Tekell stated that even if the flashing beacon light had been installed, Ms. Jacques still might have had the accident since she failed to comply with the control devices that were in place.

DOTD LIABILITY
In a tort action against DOTD, whether based on strict liability or negligence, the plaintiff must show: (1) the property which caused the damage was in DOTD's custody; (2) the property was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive notice of the risk; and (4) the defect in the property was a cause-in-fact of the plaintiff's injuries. The analysis under either theory is the same. Toston v. Pardon, 03-1747 (La.4/23/04), 874 So.2d 791, 798-799. In this case, there is no dispute that DOTD had custody of the "T" intersection, and that DOTD had actual knowledge of the "risk" encountered at the "T" intersection, because the designing engineer recommended that a flashing beacon light be installed over the intersection as an aid to notify motorists to stop. DOTD does not dispute that although the recommendation *299 was authorized, the beacon light was not installed prior to the accident in question.
DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. DOTD's duty is to design and provide a controlled intersection that does not present an unreasonable risk of harm to motorists. Id. at 799. Of course, DOTD is not responsible for all accidents occurring on state highways, nor does it guarantee the safety of persons traveling on state highways. See Brown v. State Through Dept. of Transp. and Development, 572 So.2d 1058, 1061 (La.App. 5 Cir.1990), writ denied, 581 So.2d 710 (La.1991). The duty owed by DOTD does not include the obligation to protect a plaintiff against harm that would not have occurred but for the plaintiff's grossly negligent operation of the motor vehicle. Burge v. City of Hammond, 509 So.2d 151, 156 (La.App. 1 Cir.), writ denied, 513 So.2d 285 (La.1987). In the area of signals it is probably true that DOTD could always do more. However, it is an unreasonable burden to make DOTD liable for additional signals where the plaintiff involved does not heed those signals that are clearly available and visible. Id. at 157.
There is no jurisprudential presumption to the effect that had additional or different signals been used the driver would have obeyed them, or that the failure of the state to provide additional or different signalization at an intersection is always the cause of an accident occurring at that intersection. Id.; Menard v. City of Lafayette, 01-4 (La.App. 3 Cir. 5/23/01), 786 So.2d 354, 358; Lamaire v. Motor Convoy, Inc., 625 So.2d 638, 642 (La.App. 3 Cir.1993), writ denied sub nom. Lemaire v. Stewart, 93-2778 (La.1/7/94), 632 So.2d 754. The record is void of any evidence other than Dr. Dart's conclusory statement that if there had been a flashing beacon light, Ms. Jacques probably would have seen it and stopped. The fact that DOTD's engineer recommended the flashing beacon light prior to this accident, and at the time of the accident it had yet to be installed, does not change the fact that Ms. Jacques ignored the clearly visible signalization that was present.
We also emphasize that all experts agreed that the signs in place at the intersection at the time of the accident met and exceeded all requirements in the MUTCD. It is well settled that compliance with the provisions of the MUTCD, which is mandated by LSA-R.S. 32:235, is prima facie proof of DOTD's absence of fault when an injured motorist attempts to predicate DOTD's liability on improper signalization or road marking. See LSA-R.S. 32:235 E; Hatcher v. State Through Dept. of Transp. and Development, 467 So.2d 584, 587 (La.App. 3 Cir.1985).
After thoroughly reviewing the record, we are unable to state that the accident would probably not have occurred but for the state's failure to provide additional signalization. Ms. Jacques did not present any evidence, other than an expert's conclusory statement, to support her assertion that she would have obeyed a flashing beacon light when she did not obey the oversized signs. Ms. Jacques did not introduce any evidence establishing that the design of the intersection, the lack of a flashing beacon light, or the lighting at the intersection was a cause-in-fact of the accident. The only evidence presented on the lighting at the intersection came from the DOTD expert's opinion that the dark intersection would have provided a good contrast for seeing the illuminated oversized stop sign.
In summary, the evidence on the issue of causation simply shows that Ms. *300 Jacques failed to obey an unobstructed, clearly visible, and oversized stop ahead sign and oversized stop sign. We find that Ms. Jacques's failure to see what was clearly visible and what she should have seen was the sole cause of the accident, and the trial court was clearly wrong in finding that DOTD had any fault in causing this accident. The absence of a flashing beacon light as being a cause of the accident is based on conjecture and is unsubstantiated by the evidence. Even assuming arguendo that DOTD was negligent in failing to install the flashing beacon light after it was recommended and approved, we cannot say that this negligence was a cause-in-fact of this accident. Accordingly, we reverse that portion of the trial court judgment holding DOTD liable. Costs of this appeal are assessed against plaintiff, Sheila A. Jacques.
REVERSED AND RENDERED.