McDonald, j.
| ¿The State Department of Transportation and Development (DOTD) appeals a jury verdict finding them 47% at fault for damages incurred in an automobile accident in which a young man was killed. For the following reasons, the judgment is reversed.
FACTS
Shortly after 11:30 p.m. on Saturday, April 3, 1999, the vehicle that Karen Stewart was driving, heading south on Highway 30 in Iberville Parish, was struck by a vehicle operated by Karen Sherman that was turning left to travel north on Highway 30 from Bayou Paul Road. Ms. Stewart was seriously injured, and her 15 year-old brother, Michael Foreman, was killed. A petition for damages was filed in March 2000 by Karen Stewart and Josephine and I. David Foreman, the parents of Michael Foreman, against the State of Louisiana through the Department of Transportation and Development, Karen Sherman, and her insurer, Imperial Fire and Casualty Insurance Company. On November 14, 2002, a motion and order for partial dismissal was signed by the trial court, dismissing Karen Sherman and Imperial Fire *960 and Casualty Insurance Company based on the parties’ representation that all matters between them had been amicably compromised.
The trial of this matter was originally set for May 12, 2003, however, it was continued, and further delayed by appellate and supreme court review of writ actions. A jury trial was held August 13 through 17, 2007, with the jury awarding damages to Karen Stewart,[1] $1,100,000.00 to each of Michael’s parents for their personal loss, and $9,581.75 for funeral expenses. DOTD appeals alleging five assignments of error: (1) it was error to find that any negligence of DOTD was a substantial factor, or legal cause of the accident; (2) it was error to find that the intersection of La. Highway 30 and Bayou Paul Road was unreasonably dangerous pat the time of the accident; (3) it was error to exclude in limine the entirety of the contents of DOTD Traffic Signal Inventory File # 14 and the testimony of DOTD Chief Traffic Engineer Peter Al-lain; (4) it was error for the court to admit evidence and testimony based on hearsay-within-hearsay police offense reports facially inadmissible under LSA-C.E. art. 803(8)(b)(i) & (iv) and irrelevant under LSA-C.E. art. 402; and (5) the award of 1.1 million dollars to each parent of Michael Foreman was abusive.
LAW AND ANALYSIS
A plaintiff may proceed against DOTD under either a theory of negligence, based on La. Civ.Code art. 2315, or a theory of strict liability, based on La. Civ. Code art. 2317 and La. R.S. 9:2800. In order for DOTD to be held liable, the burden of proof is the same under either theory. The plaintiff bears the burden of showing that:
(1) DOTD had custody of the thing that caused the plaintiffs injuries or damages;
(2) the thing was defective because it had a condition that created an unreasonable risk of harm;
(3) DOTD had actual or constructive knowledge of the defect;
(4) and failed to take corrective measures within a reasonable time; and
(5) The defect in the thing was a cause-in-fact of the plaintiffs injuries.
Netecke v. State ex rel. DOTD, 98-1182, 98-1197 (La.10/19/99), 747 So.2d 489, 494; Brown v. Louisiana Indem. Co., 97-1344 (La.3/4/98), 707 So.2d 1240, 1242; Lee v. State, through Dept. of Trans. & Dev., 97-0350 (La.10/21/97), 701 So.2d 676, 677-78. To recover, plaintiff bears the burden of proving all these inquiries in the affirmative and failure on any one of them is fatal to the case. Netecke, 747 So.2d at 494.
LDOTD’s duty is to maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. (Emphasis in original.) Netecke, 747 So.2d at 494-495; Campbell v. Louisiana Department of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 901-02; See also La. R.S. 48:21(A). This duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive. Netecke, 747 So.2d at 495; Ledbetter v. State, Through La. Dep’t. of Transp. & Dev., 502 So.2d 1383, 1387 (La.1987).
This duty, however, does not render DOTD the guarantor for the safety of all the motoring public. Further, DOTD is not the insurer for all injuries or damages resulting from any risk posed by obstruc *961 tions on or defects in the roadway or its appurtenances. Moreover, not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Whether DOTD breached its duty to the public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on all the facts and circumstances on a case by case basis. Netecke, 747 So.2d at 495.
The facts in the matter before us are that Karen Sherman was traveling down Bayou Paul Road heading toward Highway 30, Nicholson Road. At the intersection of Highway 30 and Bayou Paul Road there is a stop sign and also a blinking traffic signal light that is red for Bayou Paul Road and amber for Highway 30. Ms. Sherman was deceased by the time of the trial, and her deposition had not been taken. Her daughter was also in the car on the night of the accident, but the defendant was not able to locate her, and no evidence was admitted that described the accident from the perspective of the Sherman vehicle. Consequently, there was no evidence regarding the exact sequence of events when Ms. Sherman reached the | ¿intersection. Specifically, it was a matter of some conjecture whether she stopped at the stop sign and then proceeded, or whether she “blew through” the intersection without even stopping. It is undisputed, however, that she failed to yield, unlawfully entered the roadway, and was the direct cause of the accident.
Louisiana Revised Statute 32:234 provides, in pertinent part:
A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) FLASHING RED [STOP SIGNAL] — When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
Louisiana Revised Statute 32:123(B) defines the duty of the motorist approaching an intersection regulated by a stop sign:
B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
The jury found that Ms. Sherman was negligent and that her negligence was the cause of damages. It attributed 53% of the fault to Ms. Sherman.
The jury also found that the intersection created an unreasonable risk of harm, and eleven jurors found that the unreasonable risk of harm at the intersection was a proximate cause of the accident. The plaintiffs argued that DOTD was negligent in not installing a semaphore traffic light. The plaintiffs maintained that had Ms. Sherman encountered a steady red light she would have waited until it | ¿turned *962 green before entering the intersection, and the accident would have been avoided.
The plaintiffs were required to prove that the defect was unreasonably dangerous and that it created an unreasonable risk of harm. “The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred. In fact, the vice or defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.” Forbes v. Cockerham, et al., 08-0762 c/w 08-0770 (La.1/21/09), 5 So.3d 839. The plaintiffs must prove that the intersection of Highway 30 and Bayou Paul Road presented an unreasonable risk of harm to a person using ordinary care, and that action by DOTD could have prevented this harm.
Testimony was solicited from numerous witnesses regarding the intersection of Highway 30 and Bayou Paul Road. The mayor of St. Gabriel, George Grace, testified that he was a lifelong resident of the area and has known the intersection for most of his life. He gave a history of the intersection beginning with when La. Highway 30 was a new road. He remembered the installation of the flashing traffic signal in around 1976; he testified that there was an increase of traffic due to a new development, Pecan Acres, that required a person traveling from Baton Rouge to make a left turn; and also noted increased traffic on Saturday nights of LSU football games. He also testified that at a March 1997 meeting of the council of the Town of St. Gabriel, concern from residents requesting a traffic signal at the intersection of Highway 30 and Bayou Paul Road was discussed, and a motion was passed to invite representatives from DOTD and the legislature to the next board meeting.
Testimony from other witnesses established that the problems at the intersection were primarily during peak traffic hours. In response to plaintiffs’ 17question about traffic backing up trying to get across the intersection, Mr. Cliff Comeaux testified that it wasn’t usually backed up, but around 4:30 in the afternoon on work days there would be a lot of traffic. Gail May-eaux, another lifelong resident, testified that there were peak times of traffic, caused when people were going to or getting off from work. Mr. Thomas Nichols testified that he went through the intersection often for 25 years; that the traffic was heavy around 4:00 in the afternoon; that he had an accident at the intersection around 7:00 in the morning; and that the traffic around midnight is clear. Patrick Nelson, the Police Chief, also testified that at the time of night when the accident occurred, traffic was not heavy. Other persons testified that they had been involved in an accident at the intersection. However, none of these accidents were at the time, or in circumstances relevant to the accident here.
It is well-established that the plaintiffs burden in cases of this nature is to establish that the defendant is liable under the particular facts and circumstances of their case. As frequently noted by the supreme court, most recently in Forbes, whether DOTD breached its duty to the public depends on all the facts and circumstances determined on a case by case basis, and the defect must constitute a dangerous condition that would be expected to cause injury to a prudent person using ordinary care under the circumstances.
The plaintiffs here argued forcefully to the jury that the intersection was unreasonably dangerous because it did not have a traffic signal with an alternating red light on Hwy 30 and Bayou Paul Road that provided a motorist on Bayou Paul Road *963 with clear access to Hwy 30 via a steady green light. As noted, considerable testimony was offered to convince the members of the jury a semaphore traffic light should have been installed. The plaintiffs expert, Herman Hill, opined that Ms. Sherman would have stopped had there been a red light at the intersection and the accident would have been avoided. Mr. Hill’s testimony was that the traffic |ssignal would have prevented the wreck “because once you go to a traffic signal from a stop sign — at a stop sign, the driver is having to look over the shoulder, which way, they gotta look here, right and left, trying to figure out is it time to go? Can I go. Whatever. At a traffic signal that burden is taken off the driver. You simply pull up, stop and then wait until the traffic signal turns green; real simple. Nothing complicated about that.” Nevertheless, prudent drivers using ordinary care are expected to execute the maneuver of looking before entering an intersection without causing fatal accidents.
Mr. Hill further testified that the intersection was unreasonably dangerous at the time of the accident, 11:30 p.m., because an intersection is judged from a traffic engineering standpoint on the kind of condition it presents overall. The jury here, however, was not charged with making an engineering decision as to whether a traffic light should be installed at the intersection. The jury was charged with determining whether the failure to install a sempahore traffic light constituted negligence on the part of DOTD; whether the intersection was unreasonably dangerous without it; and whether the failure was a substantial factor in causing the accident that precipitated the plaintiffs’ law suit.
As noted, the jury found that the intersection was unreasonably dangerous and that it was a proximate cause of the damages in this case. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Jackson v. Tulane Medical Center Hosp. and Clinic, 05-1594 (La.10/17/06), 942 So.2d 509, 512-513. If the factual findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Graves v. Automated Commercial Fueling Corp., 05-2561 (La.App. 1 Cir. 11/3/06), 950 So.2d 759, 762. However, while great deference should be accorded to the fact finder, appellate courts have a constitutional duty to review facts, and to perform its constitutional duty properly, the appellate court must determine whether the lower court’s conclusions were clearly wrong based on the evidence or are clearly without evidentiary support. Hornsby v. Bayou Jack Logging, 04-1297 (La.5/6/05), 902 So.2d 361, 367.
In the matter under review, the finding that the intersection was unreasonably dangerous at the time of the accident because of the lack of a semaphore traffic light is clearly without evidentiary support. There was no evidence at all to establish what the circumstances were that may have caused the Sherman vehicle to illegally and fatally enter the intersection.
Plaintiffs tried to establish that the intersection was dangerous because it was at an obtuse/acute angle rather than a right angle. However, even the plaintiffs concede that DOTD had no obligation to reconfigure the intersection to change this. Further, Mr. Hill’s testimony regarding the problems that can be caused by having to view oncoming traffic at an acute angle *964 was purely speculative and could not have supported a finding by the jury because there is no evidence that Ms. Sherman ever stopped to check for oncoming traffic before proceeding through the intersection.
The defendant argues that where a motorist has a clear view of the highway during a period of little to no traffic congestion, and simply ran the red flashing light, the lack of a different type signal cannot establish cause-in-fact, and maintains that to hold otherwise would be unprecedented in our jurisprudence. There is substantial jurisprudence finding that there is no negligence on the part of DOTD when an accident is caused by the fault of a motorist failing to obey the existing signage and arguing that had a different warning been given it would have been obeyed. This court relied on that proposition of law in Jacques v. State ex rel. Transport, 03-2226 (La.App. 1 Cir. 9/17/04), 905 So.2d 294, 298-300, writ denied, 04-3013 (La.2/18/05), 896 So.2d 36, finding that in spite of the expert’s opinion that if there had been a flashing beacon light Ms. Jacques probably would have seen it and stopped, the fact was that Ms. Jacques ignored the clearly visible signalization that was present, and that DOTD was not liable for the accident.
In Burge v. City of Hammond, 509 So.2d 151 (La.App. 1 Cir.1987), Ms. Burge failed to yield at an intersection controlled by a flashing red light and collided with a vehicle traveling on the highway controlled by the flashing amber signal. She filed suit against the City of Hammond and DOTD. It was determined that DOTD had the sole control and custody of the traffic signal, and judgment was rendered against it, finding it 50% hable for the damages sustained in the collision. Eleven right angle collisions had occurred at this intersection from October 1981, through July 1982, between 11:30 p.m. and 5:30 a.m. while the traffic signal operated in a flashing mode.[2] The plaintiffs expert testified that drivers tend to obey a continuous signal light more than they do a flashing red light. Based on the accident history of the intersection, the trial court found that the flashing light was a substantial contributing cause of the accident. In reversing, this court noted that “[i]n the area of signals it is probably true that DOTD could always do more. However, it is an unreasonable burden to make DOTD hable for additional signals where the plaintiff involved does not heed those that are present.” Burge, 509 So.2d at 157. It held that DOTD’s duty to maintain highways in a reasonable safe condition, which includes adequate signing and signaling, does not extend to the risk of a plaintiff whose injury is caused by her own gross negligence and inattention to a properly working signal. Id.
InThe plaintiffs here argue that the conduct of Ms. Sherman was not grossly negligent, she was merely momentarily distracted or otherwise inattentive; in other words, her conduct fell within the ambit of conduct that DOTD has a duty to protect. It was emphasized that while there was testimony that suggested Ms. Sherman failed to stop at the intersection, defendant did not prove this. The burden of proof in this matter, however, lies with the plaintiff, not the defendant. Moreover, jurisprudence supports finding gross negligence under the facts known to us here, whether or not Ms. Sherman in fact came to a complete stop. “When a motorist stops her vehicle before entering a right- *965 of-way street, she has performed only half of the duty that the law has imposed upon her. To stop and then proceed in the immediate path of oncoming vehicles constitutes gross negligence.” Holt v. State Through Dept. of Transp. and Development, 28, 183 (La.App. 2 Cir. 4/3/96), 671 So.2d 1164, 1171; writ denied, 96-1132 (La.6/21/96), 675 So.2d 1080 and cases cited therein. We find that the defendant’s first two assignments of error have merit.
Defendant next contends that it was error for the trial court to exclude the entire contents of DOTD Traffic Signal Inventory File # 14 and the testimony of DOTD Chief Traffic Engineer Peter Al-lain. We will address this issue only briefly because the jury verdict must be reversed due to the erroneous findings noted above. The contents of the DOTD file in question had been the subject of pre-trial motions because 23 U.S.C. Section 409 provides a privilege for certain documents compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of roadways. In response to a writ application regarding admissibility of evidence,[3] this court ordered the trial court to conduct an in camera inspection of the Traffic Signal Inventory file and to produce from said file copies of any documents regarding the intersection in question according to the 112“content and purpose” analysis as set forth in Long v. State of Louisiana, Through the Dept. of Transportation and Development, 04-0485 (La.6/29/05), 916 So.2d 87. During the trial, the defendant attempted to introduce certain documents from the file. The trial court noted the above order of the appeal court, and stated that it had conducted the inspection. Unfortunately, the trial court did not disclose his findings on the record. The trial court ordered that for the defendant to use anything in the file it would have to waive any privilege it may be entitled to pursuant federal statute, for the entire file. We have conducted our own review of File # 14 and we find much of the contents were not privileged and were admissible. It was error for the court to exclude the entire file. Further, the trial court prohibited Mr. Allain, DOTD’s chief traffic engineer, from testifying because he indicated in answer to questioning by the court that he intended to base his testimony in part on documents found in the file and the conclusions reached by traffic engineers. We find that it was legal error to thus preclude Mr. Allain’s testimony. In addition to the factual matters developed by the writ actions, and pertaining exclusively to this matter, we note that the provisions of La. Evidence Code art. 703 [4] preclude the trial court from prohibiting expert testimony because it is based in part on inadmissible evidence. Mr. Allain is a state traffic engineer whose job requires him to review all engineering reports and requests for signals. Also, he had personal experience of the accident location. He was prepared to testify whether the traffic and other circumstances would have mandated a traffic light at the time of the accident. The defendant did proffer Mr. Allain’s testimony, which includes his opinion that the intersection at issue did not meet the *966 MUSCTD 113warrant to have a semaphore traffic signal and that DOTD had installed a signal after the accident, but that it was a political rather than an engineering decision.
Based on our thorough review of the entire record and the law and jurisprudence pertaining to this matter, we find that DOTD was not at fault, and is not liable for any of the damages incurred in this accident. The jury verdict is reversed, and 100% of the fault for the accident is attributed to Karen Sherman.
Costs of this appeal are assessed against the appellees.
REVERSED AND RENDERED.
PETTIGREW, J., concurs.

. Karen Stewart was deceased by the time of trial from causes unrelated to the accident.

. The signal at issue in Burge was a semaphore traffic signal; between 5:30 a.m. and 11:30 p.m. the signal operated in the continuous mode and from 11:30 p.m. to 5:30 a.m. it was a flashing signal.

. Stewart v. State of Louisiana, Through the Dept. of Trans. & Development, 2006 CW 1040 (La.App. 1 Cir. 10/12/06) (unpublished).

. Louisiana Code of Evidence article 703 provides for bases of opinion testimony by experts. It states: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.”